MARY JANE MORSEY, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF HAROLD MARSH MORSEY, DECEASED, PLAINTIFF-RESPONDENT, v. LUTHER ERLE, DEFENDANT-APPELLANT.

Argued March 13, 1950—Decided March 27, 1950.

*Mr. John C. Stockel* argued the cause for the appellant.

*Mr. Edmund A. Hayes* argued the cause for the respondent (*Messrs. Coddington & Blatz,* attorneys).

The opinion of the court was delivered by

BURLING, J. This appeal by the defendant stems from a judgment of the Superior Court, Law Division, entered on a jury verdict in favor of the plaintiff. The appeal is addressed to the Superior Court, Appellate Division, but has been certified by this court on its own motion.

The action is one for wrongful death and is predicated upon the alleged actionable negligence of the defendant in an intersection collision between a fire truck which was being

operated by the defendant and a milk truck which was being operated by the plaintiff's husband in which the latter suffered injuries causing immediate death. The appeal is grounded upon two alleged errors of the trial court—(1) that the court erred in not dismissing the action for lack of proof of any negligence which proximately caused the collision and consequent death and (2) that the court erred in including in its charge to the jury the substance of *R. S.* 39:4–144, which provides that "* * * no driver of a vehicle * * * shall enter upon * * * a through street * * * unless he has first brought his vehicle * * * to a complete stop * * *" because it is contended that there was no proof that the defendant did not stop before entering the intersection.

The first point suggested by the appeal for our determination is whether the evidence and the reasonable inferences to be drawn therefrom spell out a *prima facie* case of negligence on the part of the defendant which proximately caused the fatal collision. We think they do and that the trial court properly denied the defendant's motion for dismissal of the action. A motion for the involuntary dismissal of an action under our present practice, *Rule* 3:41–2, is comparable to a motion for an involuntary nonsuit under our former practice. Under the former practice a motion for an involuntary nonsuit admitted the truth of the plaintiff's evidence and every inference of fact that could be legitimately drawn therefrom which was favorable to the plaintiff. The same rule obtains with respect to a motion for an involuntary dismissal under our present practice.

It was alleged in the complaint and admitted in the answer that the collision occurred on December 23, 1946, at the intersection of Oak Tree Road and Plainfield Avenue, Oak Tree, Middlesex County, New Jersey, and that the defendant was driving a fire truck owned by the Borough of Metuchen. The case was tried on the theory that the defendant was driving the fire truck from Metuchen to the Town of Irvington for the purpose of having certain repairs made to the truck.

During the trial evidence was presented by the plaintiff from which the following facts might have been found: The

collision occurred at approximately 8 A. M.; the weather was clear and the roads were dry; the defendant was driving the fire truck along Plainfield Avenue in a northerly direction toward the intersection of Oak Tree Road and Plainfield Avenue; Plainfield Avenue is a stop street; the area to the defendant's left, within 75 feet of the intersection, was unobstructed and a clear view could be had looking west along Oak Tree Road for a distance of approximately 200 feet; the decedent was operating a milk truck, loaded with milk, in an eastwardly direction along Oak Tree Road; Oak Tree Road as it approaches the intersection with Plainfield Avenue is straight but inclines upward; the milk truck's speed was limited to 34 miles per hour by a governor; the point of contact of the fire truck with the milk truck was the right rear fender of the milk truck; the milk truck was turned over and came to rest on its left side in the center of Oak Tree Road at a point approximately 48 feet east of the center line of the intersection; the position of the fire truck immediately after the collision was not ascertained by the plaintiff; it was moved to a different position shortly after the collision; a gasoline service station was located at the southwesterly corner of the intersecting roads; the building was approximately 75 feet southwardly from Oak Tree Road; the operator of the gasoline service station heard a siren as the fire truck was travelling toward Oak Tree Road and within a matter of seconds thereafter he heard a crash and looked in the direction from which the noise emanated and saw the milk truck turning on its side near the point where the milk truck ultimately came to rest; the defendant, in a statement made to a police officer shortly after the collision, said "* * * he was traveling north on Plainfield Road towards Oak Tree Road, and upon approaching the intersection he blew his siren, looked, and proceeded onto Oak Tree Road when he was struck by an oncoming milk truck which was traveling east on Oak Tree Road from Park Avenue at a fast rate of speed." While no evidence was offered by the defendant it is stated in his brief that it was his intent "to make a left hand turn and proceed west on Oak Tree Road."

The evidence was in a large measure circumstantial because the lips of the driver of the milk truck were sealed by death. The defendant, the other party involved in the collision, offered no testimony. The service station operator who heard the siren and within a matter of seconds thereafter heard a crash, testified that while he did not see the actual contact of the two vehicles he did see the milk truck immediately thereafter turning on its side at a point near the place where it came to rest. The position of the milk truck when it came to rest was in the center of Oak Tree Road about 48 feet east of the intersection; it was lying on its left side and its right rear fender was damaged. The inference from this evidence may be drawn that the milk truck had proceeded to a point well within the intersection at the time of the collision. The inference is strengthened by the evidence that the milk truck was limited in its speed by a governor; it was loaded with milk; and it was proceeding up an incline. This evidence negates the statement made by the defendant to the interrogating police officer shortly after the accident that the milk truck was travelling "at a fast rate of speed." The reasonable inference from the defendant's statement to the police officer that "upon approaching the intersection he blew his siren, looked, and proceeded onto Oak Tree Road" may be that the defendant did not bring his vehicle "to a complete stop" before entering upon Oak Tree Road as required by *R. S.* 39:4–144. An inference may be drawn that if he had so stopped his vehicle he would have said so in his statement to the police officer. The inference is further fortified by his statement that he "blew his siren, looked, and proceeded onto Oak Tree Road;" it may be inferred that if his vehicle had been brought to a complete stop before he entered upon Oak Tree Road there would have been no occasion for him to blow his siren as the visibility to his left was clear for a distance of 200 feet in the direction from which the milk truck was approaching. A consideration of all the evidence clearly indicates a complex of circumstances from which legitimate inferences may be reasonably drawn that there was negligence on the part of the defendant which proximately caused the

collision and the resultant death of the decedent. Such evidence and inferences which may be properly drawn therefrom go well beyond the areas of speculation and surmise. Such circumstances make out a case which justifies an inference of probability, as distinguished from the mere possibility, of negligence on the part of the defendant in accordance with the established pertinent law of negligence of this State as recently reiterated by this court in several cases. *Woschenko v. C. Schmidt & Sons*, 2 *N. J.* 269 (1949) ; *Callahan v. National Lead Co., Titanium Division*, 4 *N. J.* 150 (1950). There was no error in the trial court's submission of the case to the jury.

Since we have determined that there was a justifiable inference which might be drawn from the evidence adduced that the defendant did not observe the requirements of *R. S.* 39 :4–144, we find no merit in his second ground of appeal.

Trials are not games of skill but inquiries into truth that justice may be done. This case is an example of the failure of the plaintiff to utilize the avenues provided by the Supreme Court Rules to obtain the fullest possible knowledge of the facts before trial in order to reduce possibility of surprise and the danger of shunting justice by leaving the court and jury in the dark as to any material fact known to either party.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT and BURLING—5.

*For reversal*—Justice WACHENFELD—1.