MARY CAUCO, PLAINTIFF-APPELLANT, v. ANNA GALANTE, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF JOSEPH GALANTE, DECEASED, DEFENDANT-RESPONDENT.

Argued November 27, 1950—Decided January 2, 1951.

*Mr. William V. Azzoli* argued the cause for the appellant.

*Mr. Milton M. Unger* argued the cause for the respondent (*Messrs. Milton M. and Adrian M. Unger,* attorneys).

The opinion of the court was delivered by

BURLING, J.   This is an appeal by the plaintiff from a final judgment entered in the Superior Court, Chancery Division, in favor of the defendant pursuant to a motion therefor at the close of the plaintiff's case.   The appeal was certified by the Supreme Court on its own motion.

The essence of the complaint is that the plaintiff entered into an oral agreement with her brother, Joseph Galante, now deceased, and the latter's wife, Anna Galante, the defendant herein, whereby the plaintiff was to sell certain land and premises owned by her and located at No. 622 South Orange

Avenue, Newark, New Jersey, and lend the proceeds from such sale to the said Joseph Galante and Anna Galante, his wife, and that such loan was to be secured by a mortgage against premises No. 630 South Orange Avenue, Newark, New Jersey, title to which premises was in the name of defendant, Anna Galante. The complaint alleges, so far as is pertinent hereto, that the plaintiff fully performed her undertaking under the agreement by executing a deed dated April 2, 1946, conveying the premises owned by her to one Patrick Cullinane and Rose, his wife, which deed had been submitted to her for execution by the said Joseph Galante and Anna, his wife, and turning over to the latter the entire proceeds of such sale, alleged to be $13,392; that despite numerous requests thereafter by the plaintiff for delivery of the mortgage papers securing the loan made by her, such papers were never forthcoming although assurances were repeatedly given by her brother, Joseph Galante, that the plaintiff was protected; that Joseph Galante died on May 22, 1949, and the defendant became the administratrix of his estate; and further alleges that demands thereafter made upon the defendant for delivery of a bond and mortgage in accordance with the agreement were unavailing. The relief demanded in the complaint was that the defendant, individually and as administratrix of her husband's estate, account for the money so obtained and execute a bond secured by mortgage against No. 630 South Orange Avenue, Newark, New Jersey, in accordance with the oral contract; that the defendant pay the plaintiff the sum due her and that the amount be impressed as a lien upon said lands and premises; that a lien be impressed for the amount found to be due upon the assets of Joseph's estate and upon the property of the defendant; that the defendant be restrained from disposing of the said lands and premises standing in her name and of the assets of the estate; and for such further or other relief as might be just and equitable.

The defendant in her answer, *inter alia,* denied the existence of any agreement as alleged in the complaint and denied that any money was due the plaintiff as alleged, and set up

four separate defenses which, so far as they are pertinent to this appeal, charged that the plaintiff had no interest in or lien upon the defendant's property. By an amendment to her answer, prior to the pretrial order, the defendant pleaded as a fifth separate defense, the Statute of Frauds.

The pretrial order limited the trial of the action to the following issues:

"a. Was there an agreement between the plaintiff and Joseph and Anna Galante whereby the plaintiff agreed to convey to Patrick Cullinane and his wife the premises first described, and was the consideration therefor to be retained by the defendants as a lien to be secured by a mortgage on the premises secondly described.

"b. If there was such an agreement, then there should be an accounting and a lien for the amount found to be due."

At the close of the plaintiff's case, the defendant moved for judgment. The trial judge, in a letter opinion, dated May 19, 1950, concluded that the plaintiff had not borne the burden of establishing the alleged agreement and decided that the complaint should be dismissed. The opinion states that "There was no testimony as to the terms and conditions of the mortgage which the plaintiff alleges her brother agreed to give her." Subsequent thereto, but prior to the entry of judgment, the plaintiff applied for permission to produce additional evidence; this application was denied and final judgment was entered in favor of the defendant on June 20, 1950. The present appeal is from that judgment.

The first question for our determination is whether the trial court erred in adjudging that the plaintiff had failed to establish *prima facie* the alleged oral agreement. We think it did. The defendant's motion for judgment at the conclusion of the plaintiff's case was made pursuant to *Rules* 3 :41–2 and 3 :50 as amended. Such a motion necessarily admits the truth of the plaintiff's evidence and every inference of fact that may be legitimately drawn therefrom favorable to the plaintiff. *Morsey v. Erle*, 4 *N. J.* 276 (1950) ; *McKinney v. Public Service Interstate Transp. Co.*, 4 *N. J.* 229 (1950). This principle is conceded by the defendant.

An examination of the plaintiff's evidence, in the light of the foregoing principle, discloses the following: The plaintiff became the owner, in 1937, of premises No. 622 South Orange Avenue, Newark, New Jersey, as the result of foreclosure proceedings instituted by her in 1936 in which she foreclosed a mortgage owned by her against said premises in the amount of $12,000; that in February, 1946, her brother, Joseph Galante, informed her that he had obtained a buyer for the above property and inquired if the plaintiff would sell it; that the plaintiff agreed to a sale; that the plaintiff was not interested in the amount of the sale excepting that she wanted to receive $12,000 representing her original investment in the property; that Joseph Galante asked the plaintiff "to loan him this money when she would get it from the sale of this property;" that the sale was negotiated by Joseph; that the plaintiff executed a deed presented to her at her home by Joseph and the latter's attorney, the plaintiff being unrepresented by counsel; that four checks aggregating $13,888.14, representing the proceeds of the sale, were endorsed to the order of the plaintiff and by her endorsed and delivered to Joseph Galante and subsequently endorsed by him; that Joseph Galante and his wife, Anna, promised to execute a mortgage on premises owned by the defendant, located at No. 630 South Orange Avenue, Newark, New Jersey, in the amount of $12,000, to secure the loan being made to them by the plaintiff, with interest at 3 per cent; that the defendant said "Don't worry, Mary, we will see that you get paid; your brother will never turn you down, and I wouldn't turn you down;" that no mortgage was given to the plaintiff by Joseph and the defendant; that subsequent requests therefor were productive of assurances given by Joseph to the plaintiff that "you are protected, you can trust me;" that the plaintiff placed great confidence in Joseph, her brother; that just before Joseph's death, in response to an inquiry by the plaintiff's son-in-law as to what had been done to protect the plaintiff, Joseph said: "Everything is taken care of, everything is in my wife's hands, and everything will

be all right;" and that subsequent to Joseph's death, a request of the defendant, Anna Galante, for repayment of the money so loaned was refused.

The foregoing evidence amply spells out an agreement whereby the plaintiff agreed to convey her property, and the consideration therefor was to be retained by Joseph and his wife, Anna, as a lien, to the extent of $12,000, to be secured by a mortgage on the premises owned by Anna, and located at No. 630 South Orange Avenue, Newark, New Jersey, within the scope of the pretrial order. The defendant urges, however, that the agreement is not sufficiently clear to justify its enforcement. It is said that there was no testimony concerning the term of the mortgage or the usual provisions of a mortgage with respect to default in interest, taxes, etc., and that the absence of proof with respect to when the principal amount of the mortgage would become due and payable, standing alone, rendered the plaintiff's proofs incomplete, indefinite and uncertain. The defendant relies, primarily, upon *Nichols v. Williams,* 22 *N. J. Eq.* 63 (*Ch.* 1871); *Potts v. Whitehead,* 20 *N. J. Eq.* 55 (*Ch.* 1869); affirmed, 23 *N. J. Eq.* 512 (*E. & A.* 1872); *Moore v. Galupo,* 65 *N. J. Eq.* 194 (*Ch.* 1903); and *Tansey v. Suckoneck,* 98 *N. J. Eq.* 669 (*E. & A.* 1925), in support of this proposition. Our analysis of the cited cases leads us to a different conclusion. The rationale of the *Nichols* and the *Potts* cases, *supra,* appears to be that where credit is to be extended and the time of payment of the principal amount of the mortgage and the rate of interest thereon are to be ascertained by subsequent negotiations, the contract is uncertain in material parts and hence unenforceable. Such was the construction given to the *Nichols* and *Potts* cases by the Chancellor, in *Green v. Richards,* 23 *N. J. Eq.* 32 (*Ch.* 1872); affirmed, *sub nom. Richards v. Green,* 23 *N. J. Eq.* 536 (*E. & A.* 1872). In the *Green* case, the Chancellor, referring to the *Nichols* and *Potts* cases, said, at *page* 34:

"But in those cases it was part of the agreement that time was to be given for payment. That time was a material part of the agree-

ment, and it was left undetermined. Here there is no agreement for any time. The purchaser is not entitled to any credit. In such case the mortgage should be made payable on demand; and it is the duty of a court of equity, in order to prevent a fair and just agreement from being defeated by a mere technical objection, to presume that such was the intention of the parties, and to give the agreement that construction. This makes the written agreement certain in all its parts."

In affirming that decision, Chief Justice Beasley, speaking for the Court of Errors and Appeals, in an opinion in which the entire court concurred, said (at *page* 540) :

"With respect to the objection that the agreement is imperfect, inasmuch as it does not appear when the mortgage which is 'to be given for the balance of the consideration money is to be payable, I concur with the opinion expressed in the Court of Chancery. Where nothing is said about a credit to be given, and there are no circumstances from which an inference can be made that it was the intention of the parties that the time of payment should be postponed, the money is payable immediately."

In the *Moore* case, *supra,* the Vice-Chancellor reviewed the earlier decisions and concluded that on the facts of that case it was the intention of the parties that the time of payment should be postponed and since no time for payment was fixed the complaint should be dismissed. In that case, moreover, it appears that there were numerous items contained in the contract which were uncertain, such as, whether one or more mortgages were intended to be made, and if more than one whether they should be concurrent or successive liens, or whether they should precede other mortgages, or what should be the precedence between themselves. In the *Tansey* case, *supra,* the decision affirming the dismissal of the complaint was based solely on the fact that "the paper is on its face preliminary and not final, and by its very language indicates that other features left unsettled are to be settled by further negotiations * * *." The circumstances of the present case considered in the light of *Green v. Richards, supra,* do not indicate that any term of credit was to be extended or that any further negotiations were to be had between the parties

with respect to ascertaining the term of the mortgage. The inference to be drawn from the statement of Joseph Galante that "you are protected" is that the mortgage had been actually executed by Joseph and his wife, Anna. Under such circumstances the *ratio decidendi* of *Green v. Richards, supra,* which was followed by our former Court of Errors and Appeals in *Luczak v. Mariove,* 93 *N. J. Eq.* 501 (*E. & A.* 1922) ; affirmed, 92 *N. J. Eq.* 377 (*Ch.* 1921) ; and *Cavanna v. Brooks,* 97 *N. J. Eq.* 329 (*E. & A.* 1924), is controlling in the present situation. As stated in the *Cavanna case, supra,* "when no date for the maturity of the mortgage is expressed therein, a natural presumption is that the parties intended the creditor-mortgagee to have his money when he asks for it, *i. e.,* on demand." See *Williston on Contracts* (*Rev. ed.* 1937), *vol.* 5, § 1424, *p.* 3989, wherein it is said: "It seems probable that the difficulty regarding uncertainty has been overemphasized. It should not be allowed to hamper equitable relief further than necessity requires." See also *Journal Plaza Holding Co. v. J. L. H. Co.,* 105 *N. J. Eq.* 290 (*Ch.* 1929). It is our conclusion that under the applicable law the plaintiff made out a *prima facie* case with sufficient clarity and certainty to withstand the motion for dismissal.

It is urged, however, that the alleged oral agreement is unenforceable because it violates the Statute of Frauds.

While the Statute of Frauds was pleaded by the defendant, the subsequent pretrial order limited the trial of the action to the issue therein stated; no reference to the effect of the Statute of Frauds upon such an agreement was incorporated in the pretrial order. The appendix does not disclose whether the pretrial order was modified in this respect but it was admitted at the oral argument that this was an issue at the trial. The trial judge made no mention of the effect of the Statute in his determination of the case. However, without raising any procedural objection, both parties, in their briefs and oral arguments before this court, have dealt with the effect of the Statute of Frauds upon the alleged oral agreement and consideration will be given to this question.

██ *R. S.* 25:1-5 (*Rev.* 1877, *p.* 445, *par.* 5) provides:

"No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized:

\*      \*      \*      \*      \*      \*      \*

"d. A contract or sale of real estate, or any interest in or concerning the same;"

It is recognized that an agreement to give a mortgage on real property creates an interest in real estate within the Statute of Frauds and "that the payment of money, without more, does not constitute such a partial performance as to take the case out of the statute of frauds, where real estate is involved." *Feldman v. Warshawsky*, 125 *N. J. Eq.* 19 (*E. & A.* 1938). Here, giving full credibility to the evidence offered on behalf of the plaintiff, we find that there is something beyond "the payment of money, without more." The testimony of Cornie Sabie, the plaintiff's daughter, was that in February, 1946, Joseph Galante, accompanied by the defendant, informed the plaintiff that he had a buyer for premises No. 622 South Orange Avenue, Newark, New Jersey, and asked whether the plaintiff would sell the property and "asked her to loan him this money when she *would get it* from the sale of this property," and "My mother asked them for protection." It is observed that the foregoing testimony relates to a time *prior* to the sale of the property by the plaintiff. This testimony, together with other testimony offered on behalf of the plaintiff, leads to the conclusion that while the plaintiff was not averse to a sale of the property, the sale which transpired was motivated by Joseph Galante and the defendant and that the objective of the sale was to put the plaintiff in funds to be loaned to Joseph and his wife to be secured by a mortgage. We are persuaded that the plaintiff's proofs tended to show a conveyance by her of a valuable piece of real estate which was owned by her, for a promise of a mortgage which she never received, and thus changed her position for the benefit of and at the solicitation of her brother, Joseph Galante, and

his wife, the defendant. Assuming this to be the true situation, then a fraud has been perpetrated upon the plaintiff entitling her to relief. The fundamental ground for affording relief in such a case is equitable fraud which inheres in the consequence of setting up the statute as a defense. *Pomeroy, Equity Jurisprudence* (5th ed. 1941), *vol.* 4, § 1409, *p.* 1057.

We are aware of the long established principle that in order to sustain part performance of a parol contract conveying an interest in real estate sufficiently to take the contract out of the Statute of Frauds the parol agreement must be clearly proved as to its terms and subject matter. *Cooper v. Carlisle et al.,* 17 *N. J. Eq.* 525 (*E. & A.* 1866). In the foregoing case relief was denied because the court found that "This contract is uncertain, both as to the price and as to the land." . In the case *sub judice* the terms and subject matter were sufficiently clearly proved in the light of legal precedent to resist the defense of the Statute of Frauds. Where the statute works the intolerable mischief of operating as a fraud the statute should be no bar to the granting of relief to one who has, in good faith, so performed the parol agreement as to irretrievably change the situation of the parties to the disadvantage of the plaintiff. This principle is recognized in the cases cited by the defendant. *Cooper v. Carlisle, supra; Cooper v. Colson,* 66 *N. J. Eq.* 328 (*E. & A.* 1904). See also *Thompson on Real Property* (*Perm. ed.* 1940), *vol.* 8, § 4638, *p.* 628.

It is our determination that a *prima facie* case was established by the plaintiff's proof and that it was error to award judgment in favor of the defendant at the conclusion of the plaintiff's case. An opportunity should be afforded to the defendant to submit her proofs to the end that her conscience and the entire transaction may be fully explored for the purpose of arriving at the justice of the case.

We find no error, in the trial court's refusal to permit the plaintiff to introduce further evidence after the court's opinion had been rendered, but this question becomes moot in view of our disposition of the case.

The judgment is reversed for the reasons herein stated, and the cause is remanded for a new trial, with costs to abide the event.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For affirmance*—None.