23 N.J. Super. 63 (1952)
92 A.2d 480
ENCH EQUIPMENT CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH LORENZO AND AUGUST LORENZO, T/A LORENZO MOTORS, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1952.
Decided November 5, 1952.
*65 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. David Cohn argued the cause for defendants-appellants.
Mr. Frederick M. Rollenhagen argued the cause for plaintiff-respondent (Messrs. Nugent & Rollenhagen, attorneys).
The opinion of the court was delivered by GOLDMANN, J.A.D.
Defendants appeal from a judgment entered in the Law Division of this court after jury verdict in plaintiff's favor in an action for breach of contract dated July 12, 1951 for the purchase of automotive equipment.
The parties had had dealings looking to the sale and purchase of equipment in the months preceding the events about to be recounted, but the negotiations fell through. Particularly, plaintiff had, through Richard A. Ench, its president, tried to buy two dump trucks and possibly other equipment from Lorenzo Motors in April 1951, for on April 26 Ench gave defendants his check for $1,000 on account, as well as a conditional sale contract signed by him out with the spaces usually reserved for the description of equipment sold, sales price, down-payment, trade-in allowance, deferred balance, finance charges, and the amounts and dates of instalment payments left blank. The check and the conditional sale contract figured in the July 12 transaction.
*66 On that date the parties entered into a written agreement by which plaintiff purchased and defendants sold two Rex High Lift mixer drums mounted on G.M.C. No. 853 ten-wheel chassis, and two G.M.C. No. 703 chassis with dump bodies, the purchase price being $63,260.80. Defendants credited plaintiff with a down-payment of $7,967.44, made up of the $1,000 check given them on April 26 preceding, and plaintiff's check of $6,967.44 dated July 12. Defendants allowed plaintiff $11,010.80 as the trade-in value of five Federal dump trucks. The agreement provided that the balance remaining was to be paid by "24 notes monthly."
According to Ench, he instructed August Lorenzo, acting for Lorenzo Motors, to fill in the conditional sale contract given him on April 26, so that it would provide for payment of the balance due under the July 12 purchase in 24 equal monthly instalments. The circumstances relating to this instrument will be discussed hereafter. It suffices at this point to indicate that the conditional sale contract, as filled in by defendants, provided for payment of the balance in 24 instalments, as follows: 6 monthly payments of $4,000 each, beginning August 12, 1951; 17 monthly instalments of $1,422.03; and a final instalment of $1,421.95.
The two trucks with mixer drums mounted thereon were delivered to plaintiff's place of business in Paterson on the evening of July 12. The two dump trucks have never been delivered. Defendants have refused to accept delivery of the five "trade-in" dump trucks tendered by plaintiff.
At noon on July 14, 1951 defendant August Lorenzo, without prior notice to plaintiff and without court writ, went to a sign shop in Paterson where plaintiff had left the trucks in order to have its name painted thereon, and repossessed the two trucks. Lorenzo Motors subsequently sold this equipment. Plaintiff at once instituted suit in the Chancery Division of this court.
The amended complaint is in four counts. The first seeks specific performance of the July 12 agreement and $10,000 damages, an injunction restraining defendants from *67 disposing of the equipment described in the agreement and, if specific performance is denied, judgment of $25,000. The second count charges breach of agreement and demands judgment of $7,967.44, the amount of the down-payment, with interest. The third count demands judgment of $50,000 for damages suffered by plaintiff who, relying on the agreement, entered into contracts with third parties for supplying material, work and labor which it has been unable to complete because of defendants' failure and refusal to deliver the equipment, despite their knowledge of these contracts and the fact that plaintiff relied upon their delivering the equipment. The fourth count likewise demands judgment of $50,000 because defendants' breach of the agreement has compelled and will compel plaintiff to hire trucks of comparable specifications in order to complete contracts undertaken with third parties. Defendants' answer to the amended complaint sets up a number of separate defenses, the most important being that the July 12 agreement was superseded by a formal conditional sale agreement, with which plaintiff has failed and refused to comply.
Plaintiff obtained a temporary restraining order on September 13, 1951, subsequently vacated on motion of defendants when the Chancery Division judge entered an order transferring the action to the Law Division. The pretrial order was signed December 14, 1951. Thereafter, defendants served notice of motion, returnable March 7, 1952, to amend the pretrial order and to file a counterclaim. The appendix does not contain this notice of motion; there is nothing in the appendix nor in the file to show what action was taken by the court. It would appear, from an endorsement on the counterclaim filed March 11, 1952, that the court on March 8 permitted the filing of that pleading.
Under their counterclaim defendants demand judgment of $10,562.18, representing loss on the sale of the two trucks, expenses incurred in the recapture and sale of the trucks, including storage, insurance premiums, attorneys' fees and *68 other incidental costs, and loss by depreciation in the value of the two dump trucks. Plaintiff filed its answer to the counterclaim, the endorsement indicating that it was filed by court order of March 10, 1952. That order does not appear in the appendix or in the file. The pretrial order was amended on April 30, 1952 to show that plaintiff also claimed damages for defendants' failure to accept the five trucks for which trade-in credit was allowed.
The informality attending the filing of the counterclaim and plaintiff's answer thereto does not accord with proper procedure. Particularly noticeable is the absence of any amendment to the original pretrial order which would make the counterclaim and the answer thereto part of the frame of reference governing the trial of the cause. The many colloquies between court and counsel reflect the difficulties caused by the lack of a complete pretrial order. Technical advantage will not be taken of this deficiency; in order to decide the appeal before us completely and finally, we will give full consideration to the pretrial order as amended on April 30, 1952, supplemented by the counterclaim and the answer to the counterclaim.
That answer sets up four separate defenses: (1) defendants, with intent to deceive and defraud plaintiff, filled in the conditional sale contract which plaintiff had delivered in blank, in the manner already indicated and contrary to the understanding of the parties; defendants illegally seized the equipment they had delivered; and accordingly all sums claimed by them in connection with the storage, insurance and the sale of the trucks are not owing by plaintiff; (2) defendants having failed and refused to deliver the two dump trucks, they may not claim any loss through depreciation; (3) plaintiff has rescinded the conditional sale contract because of defendants' false representations and deceit; (4) the conditional sale contract is illegal and of no force and effect because of such representations and deceit.
After three days of trial the jury returned a unanimous verdict of $7,967.44 in favor of plaintiff, "covering the *69 cash down payment on the purchase of the four G.M.C. trucks specified in the agreement of July 12, 1951," and no cause of action on the counterclaim. This appeal followed the entry of judgment.
Defendants argue three points: (1) error by the trial court in not permitting defendant to prove their compliance with the terms of the conditional sale contract and the damages resulting from plaintiff's breach thereof; (2) error in refusing to grant defendants' motion for judgment of dismissal made at the close of plaintiff's case; and (3) statements by the trial judge that were improper and prejudicial to defendant. Proper disposition of the first two arguments requires consideration of some of the testimony to show what actually took place between the parties.
The July 12, 1951 agreement was executed late in the afternoon of that day by Richard A. Ench on behalf of plaintiff and August Lorenzo acting for Lorenzo Motors. After they had signed there was some discussion as to the method of paying the balance. The clause, "Balance 24 notes monthly," was then inserted by Emma Ench, sister of Richard and secretary of plaintiff corporation, and initialed. There can be no question that by this clause the parties intended that there be 24 equal monthly instalments. Although defendants for a time insisted that equal payments were not agreed upon, their counsel, in the course of a colloquy with the court, indicated that the instalment payments were to be calculated by dividing the balance by 24. At the argument on this appeal he conceded that the payments were to be equal monthly payments. This matter is, of course, significant in considering the conditional sale contract.
That contract, as heretofore noted, figured in the abortive April 1951 negotiations between the parties for the purchase and sale of certain equipment. It was agreed on July 12 that August Lorenzo would have the conditional sale contract, which was still in defendants' possession, properly filled up. It was to provide for 24 equal monthly payments *70 of the balance due. Emma Ench testified that Lorenzo promised to fill in the conditional sale contract in this fashion and bring it to plaintiff's office the next day, together with all other title papers. The notes were not signed on July 12, nor could they be; Richard Ench testified that they were to be signed the next day, when Lorenzo gave him the deferred balance payment plan. This plan would, as a reading of the conditional sale contract in evidence reveals, set up a schedule of payments that would include not only payments of principal, but also "finance charges" which had to be determined.
August Lorenzo testified that after leaving plaintiff's office in Paterson he went to his place of business in Franklin, N.J. and there had the conditional sale contract typed up. He states he saw Ench at about 8:15 that same evening; only he and Ench were present, and they both signed the several copies of the contract. The next morning he again went to plaintiff's office and spoke to Richard and Emma Ench about the conditional sale contract. His story is that she argued with her brother that he could not pay as much as $4,000 a month for the first six months, as provided in the contract. Lorenzo claims he said that if that were so, he would take back the trucks and return the money paid; Ench demurred, and when Lorenzo said he would take the trucks Ench reached for a gun. He says he delivered no title papers to Ench, but repossessed the trucks the next day.
Lorenzo's account is unbelievable. Not only is it contradicted by the testimony of Ench and his sister, about to be mentioned, but it is demolished by the testimony of the two rebuttal witnesses. One of them stated he spent the entire evening of July 12 alone with Ench at his home, from 7 to 11 or 11:30 P.M. The other witness, Duran, testified that Lorenzo had him deliver the two trucks to plaintiff's plant in Paterson on July 12. After driving the first truck in from Newark, he met Lorenzo at Mountainside at 6:30 and the two drove to Franklin where Duran got the second truck *71 and drove it back alone to Paterson, a distance of 45 miles. He arrived before 9 P.M. and found plaintiff's office locked and no one present.
Lorenzo's testimony reveals its own weakness when he says he went to plaintiff's office on the morning of July 13 and there discussed the conditional sale contract. He gives no reason for doing so, and none appears. If, as he says, the instrument had been completed and fully executed the night before, there was nothing more to discuss.
Plaintiff's witnesses give an entirely different account and one which the jury obviously accepted as more nearly stating what happened on July 13. Richard Ench and his sister Emma both testify that August Lorenzo came to plaintiff's office early that morning and told them that he wanted changes made in the method of payment agreed upon the day before. He said his father wanted the first six monthly payments to be $4,000 each. Ench insisted this was not their agreement; he could not afford that much. Lorenzo promised to discuss the matter further with his father and to phone Ench. Instead, he seized the trucks the next day.
Defendants' motion for judgment at the conclusion of plaintiff's case was made pursuant to Rules 3:41-2 and 3:50, as amended. Such a motion necessarily admits the truth of plaintiff's evidence and every inference of fact that may legitimately be drawn therefrom. Cauco v. Galante, 6 N.J. 128, 132 (1951). If such evidence or inferences of fact will support a verdict for plaintiff, the motion should be denied. Schumann v. Horn & Hardart Baking Co., 8 N.J. Super. 153, 158 (App. Div. 1950).
Plaintiff had presented a prima facie case of breach of contract when it rested. It had fully established the July 12 agreement; defendants' representation that it would fill up and execute the conditional sale contract in accordance with that agreement, and their failure to do so; their failure to give, or even show, the completed contract to plaintiff, or to deliver other evidence of title to plaintiff; defendants' seizure of the two trucks on July 14, less than 30 hours *72 after delivery to plaintiff; their failure to return these trucks or to deliver the two dump trucks they had agreed to sell; their refusal to accept plaintiff's five trucks given as "trade-ins"; and, finally, their failure to return the $7,967.44 down-payment.
We turn, then, to defendants' argument that the trial court erred in refusing to permit them to prove compliance with the conditional sale contract or to prove damages they had sustained.
The sole issues in the court below were, did plaintiff or defendants breach the agreement, and what damages resulted to the innocent party from that breach. Defendants ground their entire case on the conditional sale agreement and claim that it was they who complied with its terms and that it was plaintiff who was guilty of its breach.
Plaintiff never assented to the conditional sale contract on which defendants rely; in fact, they were never shown it in its completed form. Defendants held a blank form, signed by plaintiff some 2 1/2 months before and whose printed terms (some of which are about to be mentioned) Ench had read. They were to fill up that form in accordance with the July 12 agreement. They did so, except for one element vital to the entire transaction  the method of paying the balance. That element was so fundamental to the arrangement that defendants' action amounted to a breach of the contract.
In their brief and at the argument defendants tried to shift the light of inquiry away from this essential factor and over to other terms of the contract. They seek justification for seizing the trucks by pointing to other provisions of the conditional sale agreement which they claim plaintiff breached. This line of argument merits little consideration in view of defendants' change in the amount and mode of payments on the balance, but will be considered if only to show how specious defendants' contention is. Defendants cite paragraph 3:
*73 "In the event the buyer defaults in making any payment at the respective times and in the manner herein specified, or in performing any term, condition or covenant herein provided to be performed by the buyer. * * * then and in any such event the entire unpaid balance of the purchase price * * * shall at the election of the seller become immediately due and payable without notice or demand."
They claim default by plaintiff in not signing the notes required in connection with the sale. Admittedly, such notes were not signed. They could not have been on July 12, for plaintiff was waiting for the schedule of payments which August Lorenzo promised to deliver the next day and which would include payments on principal and finance charges. The notes were not signed July 13, because not only did Lorenzo fail to deliver the schedule showing the amount of the equal monthly payments but actually demanded that the pattern of payments be changed. Then came the seizure of the trucks. The notes were not even mentioned as the reason for repossession.
Defendants also claim plaintiff defaulted by failing to deliver any policy or policies of insurance covering the trucks, as required under paragraph 6 of the printed terms of the agreement. No policy delivery date is mentioned in this provision, and no date was agreed upon. Lorenzo knew plaintiff had an existing fleet policy on its trucks and he requested Ench to get a rider covering the four trucks. Plaintiff was entitled to a reasonable time to arrange for and deliver such rider. It was given no opportunity to do so. At no time did defendants say they were taking the trucks because insurance coverage was not provided.
Defendants then turn to the following printed provision in the conditional sale agreement.
"* * * if the buyer defaults in complying with the terms hereof or the seller deems the property in danger of misuse or confiscation, or whenever the seller shall deem the debt or the goods insecure, the seller * * * may take immediate possession of said property without demand, * * *. The seller may resell said property so retaken, at public or private sale, without demand for performance, with or without notice to the buyer * * *."
*74 The testimony of August Lorenzo is that he became worried about plaintiff's credit on July 13, 1951. The purpose of this testimony is patent; deeming the debt "insecure," defendants were justified in seizing the trucks the next day. The testimony is totally unconvincing. Lorenzo had only a month before presented to the Yellow Manufacturing Credit Corporation  the very company that was to have financed the July 12 transaction, as shown by the conditional sale contract  plaintiff's application for credit. They refused to accept plaintiff's paper. Nonetheless, defendants entered into the deal in question, and took plaintiff's check for $6,967.44 in down-payment. Lorenzo had that check certified on July 13. At first he stated he did so because concerned about plaintiff's credit; in the next breath he said that he did so because he wanted the transaction to go through.
A possible explanation of defendants' course of action after July 12 lies, we think, in a passing remark made by Lorenzo in the course of his testimony. He said that after leaving plaintiff's office on the afternoon of July 12 he phoned the office of Yellow Manufacturing Credit Corporation and "told them I had the paper." It is a reasonable inference that because of what he was told he decided that the original plan of payments was too lenient and the transaction not as financially secure as the finance company would have it. That decision precipitated the events which followed.
Full opportunity was given defense counsel to establish through his main witness, August Lorenzo, and others that it was plaintiff who breached the contract  and we here consider the July 12 agreement and the conditional sale contract in combination. The record leaves no doubt in our minds that such breach was never established. And if there be any doubt on the face of the record, we must remember that the question of breach was left to the jury; its verdict in plaintiff's favor supports our own conclusion that defendant breached, rather than complied with, the *75 agreement. The jury having found defendants guilty of breach of contract we need not consider whether there was any error by the court in refusing to permit them to establish their damages under the conditional sale contract. Only if the plaintiff were guilty of breach, and defendants' seizure of the trucks therefore valid under the terms of the conditional sale contract, would the measure of defendants' damages become important.
Defendants complain that certain statements made by the trial judge were improper and prejudicial to their cause. Two instances are cited. The first occurred during the cross-examination of Ench. Counsel asked him whether the trucks "were repossessed" at the sign painter's, and the court interposed with the remark: "He says repossessed. You mean they were taken?" Ench replied "Yes, they were." Defense counsel made no objection, and may not now.
While Lorenzo was on the stand and under direct examination, there was a colloquy in which the court, referring to the seizure of the trucks, said to defense counsel: "You have not shown any authority for him [the peace officer] to go there and take the trucks." When counsel asked whether he had to "accept that statement in front of the jury," the court replied: "I say there is no evidence of any authority for the undersheriff, no writ to take them back, or representation, or anything of the kind." Counsel then asked the judge to note his objection and requested him to instruct the jury "to disregard the statement made by the court that the defendant in this case had any authority to repossess these trucks." The court immediately accepted the suggestion and said:
"I don't want the jury to think that they had no authority. Up to now, the facts are that the undersheriff, from the sheriff's office was present when they were to get these trucks. I do not want you to be misled by anything I said."
The judgment is affirmed.