TRANSPORT MANAGEMENT COMPANY, a New Jersey corporation, **Appellant,**

v.

AMERICAN RADIATOR & STANDARD SANITARY CORPORATION, a Delaware corporation.

No. 14553.

United States Court of Appeals Third Circuit.

Argued Sept. 17, 1963.

Decided Dec. 18, 1963.

---

Max L. Rosenstein, Newark, N. J. (Robert D. Lipscher, Newark, N. J., on the brief), for appellant.

Raymond J. Lamb, Jersey City, N. J. (Lamb, Blake, Hutchinson & Dunne, Jersey City, N. J., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

Plaintiff Transport Management Company filed a two-count complaint in the Superior Court of New Jersey, Chancery Division, against American Radiator & Standard Sanitary Corporation ("American"), seeking, inter alia, (1) specific performance of an alleged contract for the sale of real estate, and (2) damages for the fraud and deceit alleged to have been practiced upon it by defendant. The action was transferred to the district court which heard the case without a jury. At the conclusion of the plaintiff's case, the district court granted the defendant's motion to dismiss the count requesting specific performance, and at the close of all the evidence the court granted the motion to dismiss the count premised on fraud and deceit.[1] This appeal was

1. The court delivered its opinion orally from the bench.

taken from the judgment entered pursuant to that determination.

Although many of the facts attending this controversy are the subject of a vigorous dispute, the following operative events are not controverted. By letter of July 20, 1962, David A. DeWahl, Secretary of American, confirmed a listing for the sale of American's foundry plant in Bayonne, New Jersey, with Louis Schlesinger Company, a real estate brokerage firm. Representatives of Transport had viewed the property on July 18 at the request of a Schlesinger salesman, and had made an offer of $525,000 for it on that date. This was the figure at which the property had been appraised by Schlesinger. When DeWahl was informed of this offer he urged Schlesinger to ascertain whether Transport would be willing to improve upon it. On July 23, 1962, Transport increased its offer to $575,000 in the form of $100,000 in cash and a purchase-money mortgage for $475,000 payable over a five-year period. DeWahl then advised Schlesinger that American would be willing to discuss terms for the sale of the property on that basis, and he assigned Donald Balleisen, one of his legal assistants, to negotiate the transaction on behalf of American.

A conference between the representatives of the principals was held on July 30, 1962. Though the testimony as to what was said at this meeting is in conflict, the parties agree that it terminated with the understanding that Balleisen would prepare the necessary documents for effectuating the sale and would submit them to Transport. Balleisen also suggested that plaintiff should attempt to lease space in the Bayonne property to the Hartz Mountain Products Corporation, which at that time was a tenant in other property owned by Transport. It was suggested that such a lease would be assigned to American as further security for the purchase-money mortgage. On August 17, 1962, Hartz Mountain advised American by letter that it contemplated entering into a five-year lease with Transport for 150,000 square feet of the Bayonne property at a rental of $100,000 per year.

The parties met again on August 23, 1962, at which time Balleisen informed the representatives of Transport that he was leaving the employ of American, and introduced them to his successor in the negotiations, Henry Steiner. Because Steiner requested some proof of Transport's financial responsibility at this meeting, a draft of a letter of credit, dated August 28, 1962, in the amount of $100,000 from the Irving Trust Company was subsequently delivered to him. At that time Steiner gave a Transport representative a draft of the proposed "Purchase Agreement" which was then given to the attorney retained by Transport for advising it in this matter.

In a telephone conversation with a member of the Schlesinger firm on August 29, 1962, DeWahl stated that he had received an unsolicited offer in excess of that advanced by Transport and expressed the opinion that a better price could be obtained for the Bayonne property. In the meantime, Steiner continued to work on the drafts of a proposed purchase-money mortgage and a lease-back arrangement. These documents were delivered to Transport's attorney on or about August 31, and the latter raised objections to various items in them. However, because of the increasing concern on the part of the officials of American about the sufficiency of the purchase price, Grove Thompson, who had recently been hired to become American's real estate manager, was assigned to inspect and evaluate the property before the sale was completed. On September 11, Thompson completed his inspection and concluded that the $575,000 figure was grossly inadequate and, on the following day in a written report to DeWahl, recommended "that an asking price of $975,000 be applied with the understanding that $800,000 would be acceptable." That very day, DeWahl informed Transport that negotiations at the price of $575,000 were out of the question, and that American would be willing to continue discus-

sions only if Transport substantially increased its offer. When plaintiff refused to alter its position, American advised that negotiations for the sale were terminated.

In granting defendant's motion to dismiss the first count of the complaint, requesting specific performance, the district court found that the parties had reached an oral agreement as to price, but that "both parties recognized and intended that before either one was bound, the meeting of the minds should be reflected in an agreement which would comply with the statute of frauds." Plaintiff does not deny the applicability of the Statute of Frauds, N.J.S.A. 25:1–5, but asserts that its bar has been overcome by Transport's part performance of the contract.

The acts relied upon to support this argument consist of the procurement of the letter of credit from the Irving Trust Company and the efforts to secure a lease from the Hartz Mountain Products Corporation. But these are clearly legally insufficient to remove the bar of the statute for under the New Jersey cases, as under the general law, acts merely ancillary or preparatory to the contract cannot be deemed in part performance of it. Kufta v. Hughson, 46 N.J.Super. 222, 134 A.2d 463 (Ch.D., 1957); DeMarco v. Estlow, 18 N.J.Super. 30, 86 A.2d 446, 448 (Ch.D.), aff'd, 21 N.J.Super. 356, 91 A.2d 272 (App.D., 1952). Moreover, even when executed in direct pursuance of the contract, the acts must result in such an irretrievable change of position that invocation of the statute would constitute a fraud upon the performing party. Kufta v. Hughson, supra; Cauco v. Galante, 6 N.J. 128, 77 A.2d 793 (1951). In the case at bar, the letter of credit was furnished merely as evidence of Transport's financial ability to perform its promise. By its very terms, no amount was payable under it until the parties certified that a contract of sale had been executed.

With respect to the Hartz Mountain lease negotiations, plaintiff contends that its efforts in this regard were referable to the proposed agreement of sale. This is unquestionably true, but it is undisputed that the assignment of such a lease to defendant was intended to serve as further security for the purchase-money mortgage. Thus, though the efforts to secure a tenant were referable to the proposed agreement of sale, they were clearly ancillary to it. More important, plaintiff has cited nothing to indicate that these efforts resulted in an irretrievable change of position on its part, except to state that "failure to deliver such space would impair its reputation and business image in the area * * *." Of course, this is not such a change of position as would bring it within the part-performance exception to the statute.

In the alternative, plaintiff argues that American should be equitably estopped from asserting the defense of the Statute of Frauds. This is premised on testimony that agents of American had assured plaintiff that a written contract of sale was unnecessary. The district court credited this testimony, but found that "both parties ultimately recognized that there would have to be necessarily a contract of sale, a mortgage agreement, a promissory note, a deposit or letter of credit." Plaintiff specifically acknowledges the accuracy of this finding but asserts that it failed to secure a writing in reliance upon the representations that this was unnecessary. But the record clearly shows that Transport was aware that the terms of the oral discussions were to be reduced to writing and submitted to it for analysis before a binding agreement would be executed. In view of Transport's admitted awareness of the necessity for such a written agreement, we cannot see how it could be said to have relied upon the representations to its detriment. As the court stated in Kufta v. Hughson, 134 A.2d at 467:

"There is no indication in the New Jersey authorities that the bar of the statute of frauds may be avoided on the theory of estoppel by circumstances which would not qualify as part performance within the case

hereinabove discussed. In any event, estoppel requires the showing of an assumption of a position by representation or act by one party upon which the other has rightfully relied to an extent which would render unjust its repudiation by the first party."

■ Plaintiff's challenge to the district court's dismissal of the fraud count of its complaint is premised on the theory that the agents of American never intended to execute a contract of sale at the price of $575,000, and hence misrepresented an existing fact when they stated that they did so intend. There is New Jersey authority for the proposition that a misrepresentation of a present intention may give rise to a cause of action for fraud. The difficulty with plaintiff's position on this score is not with its statement of the law, but with the district court's finding that American did intend to execute a contract at the designated price.

■ A study of the record convinces us that there is substantial credible evidence to support the factual determinations of the district court in this regard. That evidence includes the conduct of the parties throughout the negotiations, the circumstances attending the conferences held to discuss the details of the sale, the testimony of witnesses for both parties concerning those conferences, and the concerted efforts of the defendant's representatives which resulted in a detailed draft of the proposed agreement at the agreed upon price together with drafts of the purchase-money mortgage and the leaseback arrangement. These factors led the district court to conclude that:

"* * * There was a clear good faith * * * intent on the part of those who spoke and acted for the defendant to live up to and carry through to the requisite consummation in accordance with the statutory requirement the terms of the transaction as they had been discussed orally among the representatives of the respective parties."

Before the transaction was reduced to writing and executed, however, the defendant discovered that the price which had been under consideration was substantially lower than its expert's estimate of the value of the property. It was at this point that defendant promptly acted to terminate the negotiations for the sale. This it had a right to do since no binding written agreement had been executed at that time.[2]

Our conclusion makes it unnecessary for us to consider the plaintiff's contention that the district court applied an erroneous theory of damages to the deceit aspect of this case.

The judgment of the district court will be affirmed.

2. Plaintiff cites the testimony of DeWahl as showing that that official did not intend to deliver title to Transport at the agreed upon price. While this witness did so indicate at one point in his testimony, he later explained his statement by pointing out that title could not be conveyed until a contract of sale had been approved. Then, in response to a clarifying question from the court, DeWahl testified that he had intended to convey title if the terms of the contract had been approved. In view of the trial court's opportunity to observe this witness and the other evidence in the record concerning DeWahl's intention, we cannot say that the court erred in crediting this testimony.

Plaintiff has also argued that because it is not bound by the limitation on the authority of American's agents contained in various corporate minutes and resolutions, the court erred in admitting these documents into evidence. But, as the district court pointed out, these documents were admitted not as evidence of the plaintiff's awareness of American's corporate practice, but as bearing upon the issue of fraud.