NELLIE A. PELLINGTON, ADMINISTRATRIX, ETC., APPEL-
LANT, v. ERIE RAILROAD COMPANY, RESPONDENT.

Argued May 23, 1935—Decided October 9, 1935.

For the appellant, *Irving Siegler*.

For the respondent, *George S. Hobart* and *Ralph E.
Cooper*.

The opinion of the court was delivered by

PARKER, J.   The appeal is from a judgment of nonsuit in
an action of negligence based on the Federal Employers'
Liability act.   The plaintiff's decedent, Ira F. Pellington,
was a conductor on a regular train carrying no passengers,
which on January 7th, 1932, after dark, arrived in the
defendant's terminal yard at Jersey City, and came to a stop
before reaching the station platforms.   His duty then was to
go to the administration office to make a report, and to do
this it was necessary to walk ahead of his standing train into
the station.   As the jury could properly say, he was on his
way thither when struck and killed, his body being badly
mangled, by another train which was arriving on the track
south of that on which his own train stood.

Interstate commerce was admitted.   The question . was
whether plaintiff had made out a case for the jury of negli-
gence by the defendant within the purview of the act and
the scope of the complaint.

There were five separate charges of negligence, but at the trial they simmered down to two, which were, 1, failure of the operators of the second train to give the station whistle required by the defendant's rules. This may be dismissed with the double comment that it was not charged in the complaint, and that if charged, the only rule relied on related to stations on the line, and not to terminals.

2. The other alleged act of negligence relied on was violation of rule 17, which reads, in part, as follows: "The headlight will be displayed to the front of every train by night. It must be concealed or extinguished when a train turns out to meet another and has stopped clear of main track, or is standing to meet a train at end of two or more tracks or a junction. It must be dimmed while passing through yards where yard engines are employed; approaching stations at which stops are to be made or where trains are receiving or discharging passengers; approaching train order signals, junctions, terminals or meeting points, or while standing on main track at meeting points and on two or more tracks when approaching trains in the opposite direction."

The pertinent words of this rule appear to be: "It must be dimmed while passing through yards where yard engines are employed." Assuming for present purposes that the rule contemplates not only protection to the operation of the yard engines and cars attached, but incidental protection to trainmen unconnected with yard engines, and either walking on tracks or so near them as to be within the overhang of a passing train, the question then arises whether in this case there was any testimony legally and reasonably evidential to indicate that the rule had been violated in disregard of a duty to deceased. All that the case shows is certain testimony of the witness Durr, a former employe of the defendant, who was on decedent's train as a brakeman, and who testified that he saw deceased walking ahead of the train. Durr was going to the rear of the train "to get the markers off the hind end of the car." This was two hundred and fifty to three hundred feet west of the signal bridge. Pellington's body was found east of that bridge, some forty feet or so, the exact

distance not being material. Durr testified on direct that (from his place at or near the rear of his own train) he saw another train coming in, about west of the Grove street signal station: which would be something like a third of a mile away as shown on the map used at the trial. He did not know what train it was, but saw the bright light, and near Henderson street (four hundred feet east of Grove street) he saw it go dim. The examination continued as follows:

"*Q.* Did you observe anything else? *A.* I looked the second time and it appeared the light was out. I don't know whether it was or not, but it was so dim that it appeared to me to be out.

*Q.* As far as you could observe you could not see the light? *A.* It appeared to me to be out.

*Q.* Where were you at that time? *A.* I was ready to go across another track, but I stood in the safety aisle until it passed me. I don't know what track it was coming in on and I don't know what train it was.

*Q.* Did you watch this train's course? *A.* Yes, it passed me.

*Q.* As you watched it cross did you observe the condition of the light? *A.* Not after it passed me.

*Q.* Did you observe it immediately prior to that? *A.* I kept watching it, yes, sir.

*Q.* From the first time you observed it, the light appeared to be out? *A.* Yes, sir.

*Q.* Did you keep watching the thing? *A.* Certainly, to find out what track it was coming in on before I cross.

*Q.* Did you see the condition of the light? *A.* It appeared to me out, yes.

*Q.* And as the train passed you, did you recognize the train? *A.* Yes, sir."

Durr was cross-examined about a previous inconsistent statement, and was asked:

"*Q.* Now, in this statement you told Mr. Padgon you did see the headlight of 1134, did you? *A.* Yes, sir.

*Q.* This morning you said it looked as if it was out? *A.* I said when I first looked at it it was bright and then went from bright to dim and then it appeared to be out."

It was on this testimony that the plaintiff rests in arguing that the jury should have been allowed to take the case. Durr did not, and naturally could not, testify as to whether the headlight of 1134 remained "so dim that it appeared to be out" after that train had passed him by several hundred feet and struck decedent.

The theory of plaintiff was necessarily that decedent in proceeding on foot through such a dangerous place as a railroad terminal yard with trains coming in, going out, and drilling, was entitled to rely on the shining of a "dimmed" headlight on an incoming train as evidence of its approach; that the headlight on No. 1134 was not only dim, but out entirely; that he looked for headlights at an appropriate time, and seeing none, concluded that he would be safe in pursuing the route that he took, even though it was on a track or too near it to clear an oncoming train.

Assuming that rule 17 was available as a protection to decedent, contributory negligence being irrelevant on a question of nonsuit, we find ourselves unable to read in the testimony quoted, any statement that the headlight was in fact out. That question was not asked of the witness, and he did not volunteer any such statement. The "Scintilla" rule does not obtain in this state. *Schmid* v. *Haines,* 115 *N. J. L.* 271, 278; 178 *Atl. Rep.* 801 (at *p.* 804). As was said over half a century ago in *Baldwin* v. *Shannon,* 43 *N. J. L.* 596, a case often cited and followed: "The power of a judge to order a nonsuit or direct a verdict, does not depend upon the absence of all testimony in opposition to the case in favor of which the ruling is made, but the test is whether there is any testimony from which the jury can reasonably conclude that the facts sought to be proven are established." We think that in the present case there was no such evidence; and the judgment of nonsuit will accordingly be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 15.

*For reversal*—None.