HUDSON COUNTY CIRCUIT COURT.

HELEN CICHOCKI, EXECUTRIX OF THE ESTATE OF AN-
DREW CICHOCKI, DECEASED, v. GEIGY COMPANY, IN-
CORPORATED.

Decided January 6, 1936.

For the plaintiff, *Matthew M. Slepin* (*Andrew O. Witt-reich*, of counsel).

For the defendant, *Townsend & Doyle* and *Mark Town-send, Jr.*

BROWN, C. C. J.   The plaintiff brings this action to recover for injuries alleged to have been sustained by the decedent while working for the defendant between the 1st day of April, 1931, and the 1st day of April, 1932.   The injuries, it is charged, resulted in a disease known as silicosis.   The decedent died about one year after the last mentioned date from cancer.   The plaintiff does not seek to hold the defendant

responsible for the death, nor is there any claim made for any excitation of or aggravation of the disease of silicosis previous to the 1st day of April, 1931. The complaint contains a general allegation of negligence, and thereafter sets forth the particulars to the effect that the defendant failed to provide a safe place for the decedent to work with proper ventilation, that proper appliances were not furnished, and that the defendant failed to inform the decedent of the hidden dangers of his employment. In deciding this motion, the court is fully cognizant of the accepted law of this state that on a motion for a nonsuit the truth of the plaintiff's evidence is admitted and every inference of fact which may be legitimately drawn therefrom. *Jones* v. *Public Service Railway Co., 86 N. J. L.* 646; 92 *Atl. Rep.* 397. Also that the only presumptions of fact which the law recognizes are immediate inferences from the facts proven. *Price* v. *New York Central Railroad Co., 92 N. J. L.* 429; 105 *Atl. Rep.* 187.

It is of importance to note the word "immediate" in considering this motion. From the testimony it appears that the disease of silicosis manifested itself between April, 1931, and the year following. The decedent was working as an engineer and fireman in the dye works of the defendant during this period, and, upon becoming ill, he left the employ of the defendant in April, 1932, and he died about a year thereafter, from cancer, at the age of sixty-four years. His illness was first diagnosed as chronic bronchitis, and, upon X-rays being taken, it was diagnosed as pneumoconiosis or silicosis, which the court understands is one of the elements of the first mentioned disease. The decedent worked as an engineer and fireman in a brass works for twenty years before his employment with the defendant, and thereafter worked for the defendant for fourteen years. His only other employment was to operate a heating plant at his own home. The testimony also shows that the disease of silicosis is of comparatively recent knowledge to the medical profession, and can only be contracted through the inhalation of dust containing silica of particles of a size of not more than ten microns, larger sizes of silica particles being incapable of penetrating the lungs and being eliminated by the human

mechanism of the body; some of the larger particles being caught in the nose or expectorated and the remainder eliminated, evidently, through the intestines.

The building in which the decedent worked for the defendant was two or three stories in height. On the ground floor there were three rooms separated by partitions and doors. One room was used for mixing dye materials in six rotary mills that varied in size from two to four feet in height. There was a door leading from the mixing room to an adjoining room known as the engine room or shower room, and another door leading from the shower room to the boiler room. The door leading from the mixing room to the shower room was operated by a pulley and weight; was self-closing and was usually closed. When the decedent first became employed by the defendant, steam power was used in the premises; several years before the decedent became ill electric power was substituted, the engine was removed from the engine room, and the room was converted into a locker and wash room equipped with showers for the convenience of the workmen. Notwithstanding this change of power, the decedent was retained in the employ of the defendant because of his many years of employment. The second floor of the building was used as a storage space for raw materials which were stored in barrels or drums.

The decedent's duties, after the change of power, were to keep a fire in the boiler, which was reduced to low pressure, so as to supply heat to the premises and furnish hot water in the shower room. He also, usually before operations and during the noon hour, oiled the mills and shafting in the mixing room, although when occasion required he would make repairs to the belting and shafts and do the oiling in the mixing room while some of the mills were in operation. The decedent was not constantly employed in the mixing room, but, on the contrary, his employment in the mixing room was occasional when any of the mills were in operation and not for long periods of time. Operations in the mixing room were carried on by the employes who worked daily ten or more hours in the room continuously, except during the noon hour.

Raw material was taken from the storage room in barrels or drums, the barrels were broken apart and the materials shoveled or scooped from the drums and broken barrels into the mills through an opening in the latter. Forty to fifty barrels were thus used each day. When the loading was finished, the opening was closed tightly and the mill put in a rotary motion. Over the top or under each mill was constructed a duct or pipe that extended to a washing apparatus in another part of the premises. By suction the air in the mixing room was changed every four minutes and was submitted to a spraying process where the solids were separated from the air and passed to the sewer outlets and the air to a stack. The mixing room was equipped with ducts, in operation in other parts of the room than those previously mentioned. There were windows in the premises, but they were closed so as to prevent the air therein from escaping to neighboring premises. While the mills were in operation, dust was present in the mixing room. Its intensity was of varying degrees. The plaintiff's witness, who worked for years in this room, testified that during the loading operations it was so dense that he could hardly recognize a fellow workman and that the workmen would become so covered with dust about their faces and parts of their bodies that they would take showers after their work and would expectorate quantities of the dye coloring after leaving the plant. It also appeared that, while the decedent was not continuously in the mixing room, when he was there the decedent's nose, face, and ears would become covered with the coloring matter, and he would, upon arriving home, expectorate substances of the same color.

The superintendent of the defendant company, who was called as a witness, testified that the ventilating system was in good working order and that the dust was not perceptible to the eye in the mixing room during operations, though a person passing through the room would get some of the coloring matter on his face. This witness admitted that respirators were furnished by the defendant for the workmen. There were none in use or provided during the period of which the plaintiff complains; cloths were furnished, how-

ever, to the workmen to be used as handkerchiefs. It also appeared that a respirator would answer in some degree as a preventative against the inhalation of dust.

In the fall of 1931 the decedent gave his son-in-law a small can of blue powder that was taken from a barrel in the storage room. It does not appear whether the barrel from which this was taken was then opened for the purpose or from what part of the barrel the specimen was taken. It was examined by a chemist, and he found the specimen to contain .483 per cent. of free silica. No dust count was made nor was any measurement taken of the size of the silica particles. No effort was made to ascertain the number of particles of silica of the size of ten microns or under. This witness for the plaintiff also testified that silica, to become dust, depends upon the size of the particles. The testimony also discloses that the air we breathe is usually charged in some degree with silica and that it takes from six months to two years for silicosis to manifest itself after the inhalation, depending upon the degree of concentration and exposure. There was no analysis made of the dust or materials that might have been found in the mixing room. It appeared that two hundred and fifty different kinds of dyes were mixed in the room where the mills were located.

It is accepted law in this state that under a contract of employment it becomes the master's duty to take reasonable care to provide a proper and safe place in which the servant may work, to furnish suitable tools and implements with which to work. The servant, on his part, assumes the risks incident to his employment; also those plain and obvious dangers which are apparent to one of ordinary skill and understanding. *McDonald* v. *Standard Oil Co.,* 69 *N. J. L.* 445; 55 *Atl. Rep.* 289. The duty of a master to a servant is discharged by providing for the use of the servant tools which are in common and ordinary use and which are reasonably safe and fit for the purpose to which they are to be applied. The liability or responsibility of a master to instruct a servant as to the danger of employment arises only when the servant is himself ignorant and when the master knows the fact he ought to know. *Tompkins* v. *Marine Engine and Machine Co.,* 70 *N. J. L.* 330; 58 *Atl. Rep.* 393.

Theories and inferences do not authorize a verdict or establish negligence unless they are the only conclusions which can reasonably be drawn from the facts proven. Negligence is a fact which must be shown. It will not be presumed. There is always a presumption against negligence. *Bien* v. *Unger*, 64 *N. J. L.* 596; 46 *Atl. Rep.* 593.

In an action for personal injury, the plaintiff, in order to recover damages, must do more than show the responsibility of the defendant for the injury. In the absence of direct evidence, he must show the existence of such circumstances as would justify the inference that the injury was caused by the wrongful act of the defendant and exclude the idea that it was due to a cause with which the defendant was unconnected. *Houston* v. *Traphagen*, 47 *N. J. L.* 23; *Suburban Electric Co.* v. *Nugent*, 58 *Id.* 658; 34 *Atl. Rep.* 1069; 32 *L. R. A.* 700; *McCombe* v. *Public Service Railway Co.*, 95 *N. J. L.* 187; 112 *Atl. Rep.* 255; *Migliaccio* v. *Public Service Railway Co.*, 101 *N. J. L.* 496; 130 *Atl. Rep.* 9.

Applying these legal principles to this case, it is a question for the jury to determine whether the decedent inhaled dust while working in the plant of the defendant during the year from April, 1931, to April, 1932 It is also a question for the jury to say whether respirators should have been furnished by the defendant and whether its failure in that connection was the cause of dust inhalation by the decedent. If the dust was impregnated with deleterious and dangerous particles of silica of sufficient concentration and of the size of ten microns or less and the decedent was exposed thereto for sufficient time to incur the injuries complained of, it would be for the jury to say whether the master breached his duty to inform the servant of this danger. The question of the adequacy of the ventilating system would also be for the jury, if it was proven that silica, to the degree and the extent just mentioned, was in the dustladen atmosphere, though it has been determined that an employer is not an insurer and the duty imposed upon him is not to furnish the safest or newest and best machines and appliances. *McDonald* v. *Standard Oil Co., supra.*

In some courts it has been held that, if a ventilating

system is in use, before the plaintiff can recover, he must offer affirmative proof that the system was not as efficient as those generally in use in like industries and that the system in use was not the same as reasonable care required. *Pennsylvania Pulverizing Co.* v. *Butler* (*C. C. A.*), 61 *Fed. Rep.* (*2d*) 311, 314. The New Jersey Supreme Court in the case of *Downing* v. *Oxweld Acetylene Co.*, 112 *N. J. L.* 25; 169 *Atl. Rep.* 709, seems to hold that it is ample evidence of negligence, though a ventilating system is installed, if smoke arises from the operations and there are further movements in a downward direction.

For the purposes of this motion, the Downing case will be followed in considering the question of adequacy of ventilation. The court finds and determines from the evidence in this case that there was no proof that the dust that existed at any time in the mixing room contained any silica; there is a want of proof that, if silica was in the dust, it was of a size of ten microns or less and that it existed in such concentrated amounts and that the decedent was exposed to the same for a sufficient length of time to cause silicosis. While it may be true that the sample procured in the storage room in the fall of 1931 contains a slight amount of free silica, .483 per cent., this does not prove that there was silica in the dust in the mixing room for nine months previous thereto. It does not prove that, if such materials were mixed with some or all the two hundred and forty-nine other kinds of material in use at the plant, silica in such quantities and of ten microns or less in size was in the dust in. the mixing room for the year complained of and was inhaled by the decedent through sufficient exposure to cause his illness. The court also finds and determines that the plaintiff has failed to exclude other causes of the disease of which complaint is made. See *Migliaccio* v. *Public Service Railway Co., supra,* and other cases cited on this point.

In the absence of direct evidence, and here is where the subject of direct evidence particularly applies, in the absence of direct evidence of responsibility, the plaintiff must by proof exclude other causes. Other causes could more reasonably have produced the effect. For example, the employment

of the decedent for twenty years in a brass works and thirteen years with the defendant company, together with the natural inhalation of silica would more probably produce the disease in a man sixty-four years of age than the inhalations from April, 1931, to April, 1932. These are some of the other causes. The plaintiff has not complained about them in his suit, nor relied upon any part of them as being the exciting cause of the disease of silicosis. The power of a judge to order a nonsuit does not depend upon the absence of all testimony in opposition to the same in favor of which the ruling is made; the test is whether there is any evidence from which the jury can reasonably conclude that the facts to be proven are established. *Baldwin* v. *Shannon,* 43 *N. J. L.* 596, 597; *Pellington, Adm'x,* v. *Erie Railroad Co.,* 115 *Id.* 589, 592; 181 *Atl. Rep.* 39.

We have not adopted the scintilla of evidence doctrine in the State of New Jersey. *Schmid* v. *Haines,* 115 *N. J. L.* 271; 178 *Atl. Rep.* 801. Nor have we adopted the rule that an industry carried on in a lawful manner, though its operation produces dust in small or large quantities, is *per se* negligent. There are but few manufacturing businesses lawfully operated in this state that are not attended by dust in their operations. To hold that the existence of dust is *prima facie* evidence of negligence would violate the rights of operators and also the presumption against negligence.

The motion for a nonsuit is granted.