33 N.J. Super. 443 (1954)
111 A.2d 100
JOSEPH KURTZ AND DAVID BUSCH, PLAINTIFFS,
v.
BENJAMIN OREMLAND, PEARL OREMLAND, DAVID LEWIS AND ALBERT M. GREENFIELD & CO., ETC., DEFENDANTS. JOSEPH KURTZ AND DAVID BUSCH, PLAINTIFFS,
v.
DUNN'S ENGLISH LEATHER SHOP, INC., A CORPORATION OF NEW JERSEY, AND LOUIS W. DUNN AND JESSIE R. DUNN AND ALBERT M. GREENFIELD & CO., A CORPORATION OF NEW JERSEY, JOINTLY AND SEVERALLY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 25, 1954.
*447 Mr. Bernard Hellring for plaintiffs (Messrs. Greene & Hellring, attorneys).
Mr. Wm. Elmer Brown, Jr., for defendants Benjamin Oremland, Pearl Oremland and David Lewis.
Mr. Carl Kisselman for defendant Albert M. Greenfield & Co.
Mr. David M. Perskie for defendant Dunn's English Leather Shop, Inc. (Messrs. Perskie & Perskie, attorneys).
*448 HANEMAN, J.S.C.
This matter concerns (1) a motion to strike certain testimony provisionally admitted at the time of trial, and (2) a motion made by the defendants for judgment at the close of the evidence offered by the plaintiffs under R.R. 4:51.
There are two suits here involved, one commenced in the Atlantic County Court and the second in the Superior Court, Chancery Division. The defendants are different in both suits, with the exception of A.M. Greenfield & Co., which is a defendant in both actions. The two actions were consolidated for the purpose of trial, a trial by jury being expressly waived. The relief demanded by these actions were both for malicious interference with contract and for a breach of contract. The alleged facts in the consolidated actions, briefly stated, are as follows:
1. On June 28, 1950 the plaintiffs entered into a contract with Dunn's English Leather Shop, Inc., hereinafter referred to as Dunn's, for the purchase of all of the fixtures and good will of a retail leather business operated by the said Dunn's at 1535 Boardwalk, Atlantic City, New Jersey. The said agreement contained the following provision:
"7. The seller agrees to transfer and assign to the buyers the lease to the said premises and all rights therein, said lease being dated April 4, 1950, made by Stanley Company of America and Dunn's English Leather Shop, Inc., a corporation of New Jersey; said transfer to take place at the time of final settlement on July 17, 1950. The aforesaid lease of April 4, 1950 provides that any assignment of said lease shall require the written approval of the lessor, the Stanley Company of America, a Delaware Corporation. * * * If approval of lessor cannot be obtained, this agreement to be void and deposit refunded."
2. The defendant Albert M. Greenfield & Co., hereinafter referred to as Greenfield, was the agent of both Dunn's in connection with the sale, and the agent of Stanley Company of America, hereinafter referred to as Stanley, as owner and lessor of premises at 1535 Boardwalk.
3. Subsequent to the date of the plaintiffs' agreement with the said Dunn's, defendants David Lewis and Pearl Oremland entered into a conspiracy to prevent the plaintiffs from *449 obtaining the approval of the lessor, as required by the agreement, and to obtain such approval for said David Lewis and Pearl Oremland, to the detriment and damage of said plaintiffs. The said Greenfield, as a part of said alleged conspiracy, then obtained an agreement for the purchase by Lewis and Oremland from Dunn's of the identical personalty theretofore covered by the first above referred to agreement with plaintiffs. This agreement with Lewis and Oremland contained a provision that it was subject to plaintiffs' agreement, and a provision similar to that quoted from plaintiffs' agreement providing for a transfer of Dunn's lease with the Stanley Company. For obtaining the Lewis and Oremland agreement, Greenfield was to receive a larger commission from them, and the Dunn's were to be free from paying the entire brokerage commission.
4. The plaintiffs were advised to transmit their information concerning their qualifications as an assignee of said lease to Greenfield as agent for the Stanley Company, and they did so. In furtherance of said conspiracy between Greenfield and Lewis and Oremland, the former, having thus obtained information from the plaintiffs, proceeded further by contacting the Philadelphia office of the Stanley Company and furnishing to it false and misleading information as to both the plaintiffs and the said Lewis and Oremland. This conduct on the part of the defendant Greenfield was requested, furthered and procured by the said Lewis and Oremland. With regard to the plaintiffs, the Greenfield defendant furnished the Stanley Company with information designed to deprecate and belittle the plaintiffs' financial standing, business experience, integrity, and the like, with the intent that the Stanley Company would disapprove an assignment to plaintiffs but would approve an assignment to said Lewis and Oremland. This conduct on the part of Greenfield and Lewis and Oremland was a malicious and wanton interference with the contract and the lawful business and occupation of the plaintiffs.
5. As a result of all of the foregoing, the plaintiffs were prevented from obtaining the stipulated approval of the *450 assignment of the lease and therefore lost their bargain to purchase the fixtures, good will and business of the said Dunn's.
The issues involved are stated in the pretrial order, as follows:
"The plaintiffs generally allege that the agreement was not carried out although the plaintiffs were at all times ready, willing and able to do so and tender performance. Plaintiffs allege that all of the defendants conspired together to prevent the performance of said contract by preventing the approval of an assignment of lease covering the premises to the plaintiffs, and that the defendants succeeded in carrying out this conspiracy, although otherwise such approval would have been granted and the plaintiffs would have received the benefit of their bargain and the contract would have been carried out."
The relief sought, as stated in the pretrial order, was as follows:
"Plaintiffs demand the following relief in action commenced in Atlantic County Court as against Dunn's English Leather Shop, Inc., Louis W. Dunn, Jessie R. Dunn, and Albert M. Greenfield & Co., compensatory damages as against said defendants under the various counts of the complaint, being one through six, and punitive damages as against all of said defendants as set forth in Count 7."
Plaintiffs demand the following relief in action commenced in Chancery Division of Superior Court as against defendants Benjamin Oremland, Pearl Oremland, David Lewis, and Albert M. Greenfield & Co., (1) as against Benjamin Oremland, Pearl Oremland and David Lewis, judgment, one, directing them to transfer and cause to be transferred to the plaintiffs the business and all its assets, (2) an accounting for conduct of said business since the same has been operated by said defendant, or in the alternative if the said defendants are unable to transfer said business and its assets to the plaintiffs, then they seek compensatory damages to extent of value of said business and its assets and accounting above set forth. Plaintiffs seek as well against all of the defendants to recover punitive damages and insofar as Albert M. Greenfield & Co. are concerned, similar compensatory damages to that above set forth as against the other defendants."
We have here an action which sounds in both contract and tort. Fundamentally, however, both actions arise out of the same alleged state of facts.
*451 The testimony which the defendants move to have stricken concerns itself with the following: (1) testimony of the profits made by Dunn's during the period of its operation of the business here in question, as a basis for computing the damage sustained by the plaintiffs; (2) testimony of the value of the good will of Dunn's computed upon the profits made by Dunn's in its operation of the business as a basis for computing the damage sustained by the plaintiffs; (3) testimony of the rental value of the premises here involved as a basis for computing the damage sustained by the plaintiffs; (4) testimony of the actual qualifications of the plaintiffs for the purpose of the approval of the assignment of the lease by the landlord; (5) testimony of the qualifications given by the plaintiffs to Greenfield for transmission to the landlord for consideration on the application for approval of the assignment of the lease.
The first two objected to portions of the testimony are so inter-related and similar that they may be considered together. It is academic that any compensatory damages to which the plaintiffs might be entitled must be such as would arise naturally as a result of the fault of the defendants. In the breach of a contract said damages, to be recoverable, must be such as may be fairly and reasonably supposed to have been in the contemplation of the parties to the contract at the time it was made and which were the probable result of the breach. Such damages must as well be reasonably certain and definite consequences of the breach, as distinguished from mere quantitative uncertainty. It has been held that in the breach of a contract to lease, the deprivation of prospective profits was not the measure of the damages of the plaintiff, and especially where the plaintiff intended to establish a new business or venture in the premises involved. In that connection, anticipated profits are so contingent, remote, speculative and problematical as to preclude consideration in the appraisement of any loss, and this follows even though the prospective tenants had conducted, at a different locality, the identical business which they intended to conduct in the new locality. Weiss v. Revenue B. & L. *452 Ass'n, 116 N.J.L. 208 (E. & A. 1936); Adrian v. Rabinowitz, 116 N.J.L. 586 (Sup. Ct. 1936).
Although the matter sub judice does not strictly concern itself with the establishment of a new business in a new locality, since it concerns the sale of an established business, the same principles are applicable in the light of the admission that the established business is to be conducted by new proprietors.
In Gross v. Heckert, 120 Wis. 314, 97 N.W. 952 (Sup. Ct. 1904), the lessor of a building which had been used for the operation of a saloon by some one other than the lessor, and in which he intended to conduct a similar business, sought to recover as damages for the defendant's breach of an agreement to lease, lost profits, based upon the business done and profits made by the prior occupant thereof. The court there held that this was in the nature of a new business venture and that the earning of profits by the plaintiff was too conjectural and uncertain. Damages for such loss of profits was therefore disallowed.
The rationale of this case is particularly apt and applicable to the matter here under consideration, especially viewed in the light of the past business experience of the operators of Dunn's and that of the plaintiffs. It appears from the testimony that the Dunn's had conducted this retail leather business for some years prior to the commencement of this suit. The plaintiff Kurtz, on the other hand, had been primarily engaged as a traveling salesman, and most recently, before the agreement of purchase was executed, as a wholesale food salesman. The plaintiff Busch was the owner and operator of a large gasoline service station and had been so occupied for some years prior to the date of the contract of purchase. There are too many imponderables concerned with the possible future operation of the business by the plaintiffs to permit of any reasonable and certain conclusion that they would have enjoyed the same patronage, business, success or profits which the Dunn's, with their years of experience, enjoyed.
*453 The measure of damages for the loss of a bargain (breach of contract) for the purchase of a going business, under the circumstances here present, is not the profits made by the prior proprietor, but rather the value of the lease which they failed to obtain. Any other method of computation is too remote, speculative, contingent and fanciful. Nor is the testimony submitted admissible in the tort action.
As in contracts, a tortious wrongdoer is liable only for the natural and probable consequences of his tortious act. The law excludes those damages which are remote, speculative and fanciful. The damages must have been the natural and the proximate cause of the wrong and must have been within the contemplation of the wrongdoer at the time of offending. In the light of the determination in the above cited cases on the contract liability that the damages here sought are too remote, speculative, contingent and fanciful to be considered in ascertaining the amount of compensatory damages, it would follow that they fall into the same category in the tort action. The same standard is applicable to both. Somerset Crushed Stone v. Explosives Sales Co., 28 N.J. Super. 210 (App. Div. 1953); Rickards v. Sun Oil Co., 23 N.J. Misc. 89 (Sup. Ct. 1945); Feldmesser v. Lemberger, 101 N.J.L. 184 (E. & A. 1925).
The testimony to which objection is made in the first two above referred to classifications will therefore be stricken, since the basis upon which it was submitted was the admeasurement of the damages by a yardstick of the profits made by the prior proprietor.
The motion to strike the testimony concerning the rental value of the premises will be denied, as this is a proper measure of damages. This constitutes an element in ascertaining the value of the lease.
Under the issues here involved, the motions above designated 4 and 5 will be denied, since both lines of testimony lend essentially required elements to the issue of whether the plaintiffs were actually prevented from obtaining an assignment of the lease through the acts and conduct of the defendants, or some of them, and whether but for such *454 interference the approval of the assignment would have been forthcoming.
It becomes necessary to consider the motion for judgment. On a motion such as here made by the defendants for judgment the court must take as true all evidence which supports plaintiffs' view and must give them the benefit of all legitimate inferences which are to be drawn therefrom in their favor. Morsey v. Erle, 4 N.J. 276 (1950); McKinney v. Public Service Interstate Transp. Co., 4 N.J. 229 (1950); Cauco v. Galante, 6 N.J. 128 (1951).
Basically, this is an action for the malicious interference of the defendants with the contract of the plaintiffs and the Dunns. Briefly stated, the plaintiffs allege that as a result of the acts of the defendants, intended to prevent approval of the assignment of the lease, the plaintiffs were unable to obtain the approval of an assignment of the lease, a condition precedent to the final transfer of the business, which in turn caused them to lose the benefit of their bargain, to wit, the transfer to them of the business.
During the trial it developed that the plaintiffs demanded the relief to which they conceived they were entitled, not only upon the theory of an active and actual conspiracy to prevent them from obtaining the requisite approval of an assignment of the lease by a misrepresentation of their qualifications to the landlord, but as well upon the theory that the defendants Dunn's and Greenfield owed them a duty which, succinctly stated, consisted of an obligation to submit their names solely to the landlord before any other names were submitted for its consideration. They conceive that the simultaneous submission of both their names and those of Oremland and Lewis to the landlord was a violation of a duty owed them and an infringement of their rights.
We have, therefore, two bases for the tort action: (1) the affirmative acts initiated for the purpose of preventing the approval of the assignment, or (2) the knowing violation of a duty which infringed plaintiffs' rights.
In order for the plaintiffs to succeed on either ground they must prove that there was a malicious interference *455 with the contract here involved. Malice, as here used, means the intentional commission of a wrongful act without just cause or excuse. Wrongful act connotes any act which will, in the ordinary course, infringe upon the rights of another to his damage, except and unless it be done in the exercise of an equal or superior right. Louis Kamm, Inc., v. Flink, 113 N.J.L. 582 (E. & A. 1934); Mayflower Industries v. Thor Corp., 15 N.J. Super. 139 (Ch. Div. 1951).
The intentional doing of a wrongful act constitutes an essential element of malice. This act need not be proved from what was said but from what may be inferred from all that was done and said and from all of the surrounding circumstances of the situation under investigation. Mayflower Industries v. Thor Corp., 15 N.J. Super. 139 (Ch. Div. 1951).
In order for the plaintiffs to succeed they must prove that the conduct of the defendants was wanton, malicious and unjustifiable.
In Louis Schlesinger Co. v. Rice, 4 N.J. 169, at page 180 (1950), the court said as follows:
"The luring away by devious, improper and unrighteous means of the customer of another falls into this category. If the disturbance or loss to one in his business is a mere incident `of competition, or the exercise of like rights by others, it is damnum absque injuria, unless some superior right by contract or otherwise is interfered with. But if it comes from the merely wanton or malicious acts of others, without the justification of competition or the service of any interest or lawful purpose, it then stands upon a different footing.' Walker v. Cronin, 107 Mass. 555 (1871). An injury to a person's business `by procuring others not to deal with him, or by getting away his customer, if unlawful means are employed, such as fraud or intimidation, or if done without justifiable cause, is an actionable wrong.' 2 Cooley on Torts (4th), section 230. One who `maliciously or without justifiable cause induces a person to break his contract with another will be liable to the latter for the damages resulting from such breach'; and this is so even though the contract be unenforceable because within the Statute of Frauds. Ibid., section 227. Merely to persuade a person to break his contract may not be wrongful `in law or in fact'; but if `the persuasion be used for the indirect purpose of injuring the plaintiff, or of benefiting the defendant, at the expense of the plaintiff, it is a malicious act, which is in law and in fact a wrong act, and therefore a wrongful act, and therefore *456 an actionable act if injury ensues from it.' Bowen v. Hall, L.R. 6 Q.B.D. 333; 50 L.J.Q.B. 305; 1 Eng. Rul. Cas. 717."
See also Louis Kamm, Inc., v. Flink, 113 N.J.L. 582 (E. & A. 1934); George F. Hewson Co. v. Hopper, 130 N.J.L. 525 (E. & A. 1943).
As has been above noted, the plaintiffs allege a conspiracy between the defendants to cause the landlord to refuse its consent to the assignment of the lease. The gist of the complaint here is not conspiracy but the damage done to the plaintiffs by the defendants' alleged conspiracy. The wrong of which the plaintiffs complain is the malicious interference with their contract. The conspiracy is not the gravamen of the charge but may be both pleaded and proved as aggravating the wrong of which the plaintiffs complain. A conspiracy cannot be made the subject of a civil action unless something is done which without the conspiracy would give a right of action. The damage is the essence of the action, not the conspiracy. Cabakov v. Thatcher, 27 N.J. Super. 404 (App. Div. 1953); Earl v. Winne, 14 N.J. 119 (1953).
It therefore again appears that the essential elements of an action for malicious interference with a contract must be proven.
According to the testimony, the weight which we are required to give it on a motion of this type, and the inferences to be derived therefrom, the plaintiffs have failed to sustain the burden cast upon them to prove a malicious interference with their contract. It is, of course, recognized that rarely if ever is it possible to prove an agreement or conspiracy to commit an unlawful act out of the mouths of participants or co-conspirators.
The testimony discloses a categorical denial by the alleged conspirators of any intentional or other wrongdoing. The inference that there was an active or intentional wrongdoing, as the plaintiffs would have us conclude, is not sustained by the evidence. The "surrounding circumstances" as proved by the plaintiffs raise no fair or legitimate inference that there was any intentional wrongdoing, especially in the light of the full and complete statements and explanations *457 made by the defendants, all of whom, their agents or employees, were called as witnesses by plaintiffs. The testimony of the employees of the Greenfield Co. and of the Stanley Co. of the manner in which and the date upon which the names of the plaintiffs and Oremland and Lewis were submitted to Greenfield and to the landlord, together with their respective qualifications, strengthens the conclusion that there was not any active or affirmative action or conspiracy to obtain the disapproval of the plaintiffs and the approval of the defendants Oremland and Lewis as assignees of the lease. The plaintiffs have completely failed to prove their allegations that the agents of Greenfield minimized the plaintiffs' qualifications and magnified the defendants' Oremland and Lewis qualifications. The plaintiffs as well failed to prove any facts from which it could be fairly deduced that Greenfield pursued any action intended to harm the plaintiffs at the suggestion or direction of Dunn's, Oremland or Lewis.
It is, as above noted, well established that a motion for judgment, as here made, should be denied unless there are no disputed facts or disputed inferences to be drawn from undisputed facts. Bachman Choc. Mfg. Co. v. Lehigh Wrhse. & T. Co., 1 N.J. 239 (1949); Schwartz v. Rothman, 1 N.J. 206 (1948).
In Township of Parsippany-Troy Hills, Morris County, v. Bowman, 3 N.J. 97, at page 107 (1949), Mr. Justice Heher said in his concurring opinion as follows:
"The legal effect of submitting a cause to a jury for its verdict is a determination by the Court that the evidence is legally sufficient to warrant a finding by the jury in favor of either of the parties to the cause. To entitle the plaintiff to recover, he must adduce evidence which, if accepted as true, is legally sufficient to sustain a verdict, and warrant a judgment in his behalf. The question of the legal sufficiency of the evidence, if accredited by the jury, is the exclusive province of the Court. This has been the recognized rule from time immemorial in the common-law courts of this country and in England. The power of the trial judge to nonsuit or direct a verdict does not depend upon the absence of all testimony contra; the inquiry is whether there is any evidence which, if accredited, would justify the affirmation, by `men of ordinary reason and fairness,' of the proposition sought to be maintained. The question is whether there is a reasonable basis in the proofs for a verdict in *458 favor of the party against whom the direction is asked? The scintilla rule does not obtain in this State. Schmid v. Haines, 115 N.J.L. 271 (E. & A. 1935); Pellington v. Erie R. Co., 115 N.J.L. 589 (E. & A. 1935); Trinkle v. Pennsylvania R. Co., 116 N.J.L. 433 (E. & A. 1936); Weigel v. Weigel, 117 N.J.L. 177 (E. & A. 1936); Sivak v. New Brunswick, 122 N.J.L. 197 (E. & A. 1939); Thoe v. Chicago, Milwaukee & St. Paul R. Co., 181 Wis. 456, 195 N.W. 407 (1923); Wigmore on Evidence (3rd ed.), section 2495 et seq."
See also Gentile v. Public Service Coordinated Transport, 12 N.J. Super. 45 (App. Div. 1951); Layton v. Healy, 12 N.J. Super. 459 (App. Div. 1951).
The plaintiffs failed to assume and discharge their legal duty to establish by the proof a prima facie case against the defendants. Conceding all of the reasonable inferences and implications flowing from the evidence as adduced, their proof fell far short of establishing the alleged malicious interference which would have justified this court in directing the defendants to go forward with their case.
It is as well to be noted that for the plaintiffs to succeed on their second theory there must have been at least an infringement of their rights, and that the acts complained of were not in the exercise of defendants' equal or superior rights. It is difficult to follow the rationale of the plaintiffs' argument that there was a duty upon the defendants Dunn's and Greenfield to submit only their names to the landlord. There is absent any proof of the plaintiffs' assertions that the defendant Dunn's agreed or guaranteed to obtain the consent of the landlord to the assignment of the lease to the plaintiffs. The most that can be said in that connection is that the defendant Dunn's agreed to aid and assist in obtaining the assignment, and with that purpose in mind arranged for the plaintiffs to attend at the office of Greenfield to submit their qualifications. The plaintiffs seek to give rise to a duty either by virtue of the affirmative agreement of the Dunn's agents, or through some legal implication inherent in the relation resulting by virtue of the contract. There is absent any proof that Dunn's ever positively agreed to get the consent of or approval of the landlord or *459 definitely assured the plaintiffs that such approval would be forthcoming as a matter of course. The plaintiffs received no exclusive right by reason of their provisional contract to have their names submitted solely and exclusively to the landlord. The defendants Oremland and Lewis had at least an equal right to have their names similarly submitted. The Dunn's had a right to enter into the provisional contract with Oremland and Lewis conditioned upon the failure of the contract with plaintiffs.
"Proof of the existence of the ulterior motive may be inferred from the improper act, but if the act be a proper one, the motive is immaterial."
Ash v. Cohn, 119 N.J.L. 54 (E. & A. 1937). So here, the acts of the defendants in submitting both names being proper and lawful, there can be no inference that it was accomplished for an ulterior motive. There is nothing in the conduct of any of the defendants, as demonstrated by the evidence, that is outside of the domain of fair trade competition. For the plaintiffs to succeed the defendants must have been guilty of undue interference or molestation.
Plaintiffs would have us impose upon the defendant Greenfield a duty to the plaintiffs arising by virtue of its agency for the Dunn's in the transaction with Oremland and Lewis not to disclose to the landlord that there were two applicants for the assignment of the lease. One Dolinsky conducted all of the negotiations with plaintiffs in connection with their purchase and was Dunn's sole agent in this transaction. Greenfield merely received a participation in Dolinsky's commission at the request of Dunn's. Greenfield was not the agent of Dunn's who consummated the transaction with plaintiffs. It must be remembered also that Greenfield had been the agent of the landlord for some years past. Plaintiffs would have us weigh the duty Greenfield owed to the landlord as against some implied and inherent duty  extra contract  to them. It would normally seem that the agent of the landlord was under a duty to convey to his principal the names of all parties who desired such an assignment and not *460 to select one of these parties. That there was no agency between Greenfield and the plaintiffs is admitted. The duty of Greenfield, if any, must then arise by virtue of its relationship to Dunn's in connection with the contract with Oremland and Lewis. Plaintiffs have cited no authority, nor is the Court conversant with any authority which would impose the duty here sought to be imposed upon either Dunn's or Greenfield. There is absent any proof of fraud, intimidation, obstruction or molestation. The loss, if any here occurred, was by reason of lawful competition, and for this the law affords no redress. Bailey v. Banister, 200 F.2d 683 (10th Cir., 1952).
In addition to the foregoing, the plaintiffs did not submit one scintilla of proof that they were disapproved as assignees of the lease, either because of the minimizing of their qualifications and the magnifying of Oremland's and Lewis' qualifications, or by reason of the fact that both their and Oremland and Lewis names were submitted simultaneously to the landlord for its approval. The most that the testimony discloses is that Wirth, the agent of the landlord, entrusted with the approval of the assignment of leases, preferred the qualifications of Oremland and Lewis over those of the plaintiffs. There is no testimony which could lead to the conclusion that had the plaintiffs' names been submitted solely and exclusively to the landlord that they would have received the requisite approval, nor that with their alleged qualifications they would have had the requisite qualifications required by the landlord. No legitimate inference can be drawn from the testimony that the conduct of any of the defendants caused the failure to obtain such a consent.
The gravamen of the action here involved is that the plaintiffs lost their bargain as a result of the conduct of the defendants. Unless there is proof that but for the conduct of the defendants, in either manner complained of by the plaintiffs, they would have had the benefit of that bargain, or at least some proof that in the normal course of events such qualifications as they had would have met the specifications *461 of the landlord, they have failed in a vital respect in carrying the burden cast upon them.
The mere proof of competition or interference is insufficient to give rise to the relief here demanded. There must be proof that the interference resulted in damage to the plaintiffs. This can mean only that by virtue of the acts of the defendants the plaintiffs failed in obtaining the requisite assignment and hence failed in the agreement to obtain the business involved. Paraphrased, plaintiffs should and must prove that the acts of the defendants were the proximate cause of the refusal of the landlord to approve them as assignees.
In an action for the malicious interference with a contract, where the breach of said contract was allegedly occasioned by the failure in the performance of a condition upon which said contract was dependent, it must be shown that such failure to perform such condition is attributable to the defendants' wrongful act. It must be shown that such condition would have been performed, or that there was a reasonable certainty that such condition would have been performed but for defendants' illegal interference. This may not be left to surmise or speculation. Such a situation is analogous to an action for maliciously interfering with the making of a contract. 84 A.L.R. 51; Union Car Advertising Co. v. Collier, 263 N.Y. 386, 189 N.E. 463 (Ct. App. 1934).
For the foregoing reasons, the motion of the defendants for judgment will be granted.