**L. T. ZOBY, trading as L. T. Zoby and Sons, Plaintiff,**

**v.**

**AMERICAN FIDELITY COMPANY, a foreign corporation, New Hampshire Fire Insurance Company, a foreign corporation, and Alexander M. Heron, Defendants.**

**Civ. A. No. 1858.**

United States District Court
E. D. Virginia, Norfolk Division.
Aug. 6, 1956.

P. A. Agelasto, Jr., Frederick T. Stant, Jr., Norfolk, Va., for plaintiff.

Vandeventer, Black & Meredith, Norfolk, Va., Barron F. Black, Norfolk, Va., for defendants.

HOFFMAN, District Judge.

This is a sequel to the memorandum heretofore filed by this Court in Zoby v. American Fidelity Company, D.C., 137 F.Supp. 38. It is unnecessary to repeat the facts therein stated, all of which are made by reference a part of this opinion. Following the Court's action in granting summary judgment on the alleged contractual claim, plaintiff filed an amended complaint against the original defendant, American Fidelity Company, and joining as defendants, New Hampshire Fire Insurance Company and Alexander M. Heron. The said Heron has never been served with process and is not before the Court. New Hampshire Fire Insurance Company filed its answer and, by stipulation, this latter company is made a party to the motion for summary judgment now at issue.

The amended complaint, while not completely abandoning the contractual theory heretofore decided by the Court, alleges in substance that Heron, acting as the agent and representative of the corporate defendants, wilfully and maliciously prevented the Navy Department from entering into the contract with plaintiff, and that the Navy Department would have entered into such a contract but for the alleged wrongful acts of Heron. To the amended complaint defendants have filed a motion for summary judgment in accordance with Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., raising questions not considered in the Court's prior memorandum. The defendants contend:

(1) That the corporate defendants had an economic interest in the subject matter of the proposed contract between plaintiff and the Navy, in that the corporate defendants would be called upon by the Navy to pay the excess cost of completion of the original contract with Regent Construction Company up to the amount of their respective

liabilities on the performance bond executed by the corporate defendants for Regent, and that the alleged interference by Heron (as agent) constitutes an exception to the rule against unlawful interference, and

(2) That the corporate defendants were requested by the Navy to give advice as to the proper contractor to complete the Oceana Steam Generator plant, and Heron (as agent) had given honest advice to the effect that the bid of J. L. Coe Construction Company should be accepted, rather than the bid of plaintiff.

In light of the Court's opinion hereinafter expressed, it is unnecessary to discuss thoroughly the second ground of said motion alleging the defense of "honest advice". As to the defense of privilege by reason of the economic interest of defendants, a different question is presented and, in the opinion of this Court, the motion for summary judgment must be granted and the plaintiff's action dismissed.

By reference to the prior memorandum of the Court, it will be noted that plaintiff, on August 18, 1954, submitted a proposal to defendant's authorized representative, Heron, wherein the original Regent contract would be completed for the total sum of $268,738. Thereupon, Heron addressed and mailed to the Navy a letter, the pertinent portions of which are as follows:

"L. T. Zoby, trading as L. T. Zoby and Sons of Norfolk, Va., has advised us that he is agreeable to undertaking the completion of the work required under the above contract in accordance with the contract specifications and addenda for the total sum of $268,738. This proposal is based upon completion of the contract within the time required by the original contract, i. e., January 15, 1955.

"We believe that the completion of the work on this basis represents a fair and reasonable cost. We are agreeable to the Navy's entering into a contract with this contractor on the basis indicated. We are agreeable to accepting as a proper charge against our performance bond, written on behalf of Regent Contracting Co., Inc., the difference between the amount of this contract and the balance of the original contract price together with retained percentages or any extra or additional amounts to which the Regent Contracting Co., Inc., might have been entitled by reason of change orders or extra work done by it.

"We are advised by the proposed contractor that he is prepared to furnish the required performance and labor and material payment bond in accordance with the Miller Act."

Prior to the time Navy could award the contract to plaintiff, Heron received a lower bid from Coe in the sum of $261,000, and Heron, after first discussing the matter with an employee of the Bureau of Yards and Docks in Washington, thereupon telegraphed the Navy on August 20, 1954, as follows:

"Reference contract NOY–74835, Steam Generator Plant, Oceana, Virginia. Refer my letter 18 August 1954. Supplemental bids from interested contractors have been received. J. L. Coe Construction Company, Inc., Charlotte, North Carolina, agrees to complete work required under contract in accordance with specifications and addenda for total sum of $261,000, with work to be completed by 15 January 1955. This bid satisfactory to American Fidelity Company and New Hampshire Fire Insurance Co. Recommend that awards be made on this basis to J. L. Coe Construction Company, Inc. Confirmation of this wire and letter follows."

That defendants, acting through Heron, interfered with plaintiff's right to enter into a contract with the Navy is

766

not presently in dispute. The pertinent question is whether or not such interference was lawful or privileged by reason of the economic interest of defendants in the subject matter. As the Navy was required to request an additional authorized allotment on the Coe contract in the sum of $30,000, which was at the ultimate expense of the corporate defendants, there can be no doubt that the corporate defendants had an economic interest in the subject matter. This economic interest would have been increased by an additional sum of $7,785 had plaintiff entered into the contract with the Navy.

For the purpose of this motion it will be accepted as a fact that Navy would have entered into the contract with plaintiff but for Heron's actions recommending Coe. Navy finally awarded the contract to Coe which resulted in this litigation.

■ There is evidence to the effect that prior to the actual award of the contract to Coe, plaintiff submitted to Navy and Heron a lower bid in the sum of $258,000, which bid was not considered by the Navy, nor was it recommended by Heron. Such evidence is immaterial to the question of unlawful interference. The interference, if not lawful or privileged, is clear for the purpose of this motion. It is apparent that time was of the essence in awarding the contract, and a lower bid of $3000.00 did not legally require Heron to again modify his recommendation as this would result in an "auction" with attendant delays. The justification of interference must depend upon the status of the parties at the time of the alleged interference and not thereafter. There is no authority requiring a party protecting his economic interest to pursue the protection of that interest to an ultimate end.

■ That an action will lie for *wrongfully* preventing one from entering into a contract is settled law in this Circuit under Lewis v. Bloede, 4 Cir., 202 F. 7, whenever the evidence establishes with sufficient clearness that, but for such wrongful interference, the contract would have been made. The issue in the present case is, therefore, whether the acts of defendants' agent, Heron, were *wrongful* in fact and in law. It may be noted that in the Lewis case, supra, the elements of fraud and corruption were patent, and in such cases the authorities universally sustain a right of action in favor of an injured plaintiff against a defendant who, by reason of such fraud, induces a third party not to enter into a contract with plaintiff.

■ The facts of the present controversy do not point to any fraud on the part of Heron or the corporate defendants. Heron did not criticize or libel plaintiff in submitting his subsequent recommendation suggesting Coe as the contracting party. The Navy was free to disregard Coe and award the contract to Zoby. There was no promise or assurance on the part of Heron that only Zoby's name would be submitted. Irrespective of the ethics involved, Heron did nothing wrongful in the legal sense and to hold otherwise would tend to destroy the freedom of competition which is so vital to the preservation of our business economy. At the most it must be said that Heron, acting with an economic interest of his principals, submitted two bids and recommended the acceptance of the lower one. Certainly if the two bids had been forwarded to the Navy at the same time, plaintiff would have no complaint. Why should plaintiff's rights become superior merely because defendants' representative made a subsequent recommendation which honestly revealed the factual situation?

The precise question has probably never heretofore been presented to any court. Closest in point appears to be Kurtz v. Oremland, 33 N.J.Super. 443, 111 A.2d 100, wherein plaintiffs entered into a written contract to purchase the fixtures and good will of a retail leather business subject to the ability to transfer the lease which lease required the written

approval of the lessor third party. One Greenfield was the agent of the vendor of the business, and also the agent of the lessor. Subsequently, Greenfield obtained another contract with other prospective purchasers, Lewis and Oremland, providing for the sale of the fixtures and good will, likewise subject to the ability to obtain lessor's approval of the lease transfer. On this latter contract Greenfield was to receive a larger commission and the vendor of the business was to be free from paying any brokerage. Greenfield proceeded to contact the lessor and deprecated plaintiff's financial standing, business experience and integrity, with the result that the lessor failed to approve the transfer of the lease as to the plaintiffs but did approve as to Lewis and Oremland which acts consummated the subsequent contract of sale. Plaintiffs contended that not only were the alleged misrepresentations actionable, but also that the vendor and broker, Greenfield, owed a duty to submit solely plaintiffs' names to the lessor before submission of any other name. Actually the names of the prospective purchasers were submitted simultaneously. After discussing the necessity of proof of malice, the court refers to Louis Schlesinger & Co. v. Rice, 4 N.J. 169, 180, 72 A.2d 197, 202, wherein it is said:

"The luring away by devious, improper and unrighteous means of the customer of another falls into this category. If the disturbance or loss to one in his business is a mere incident 'of competition, or the exercise of like rights by others, it is damnum absque injuria, unless some superior right by contract or otherwise is interfered with. But if it comes from the merely wanton or malicious acts of others, without the justification of competition or the service of any interest or lawful purpose, it then stands upon a different footing.' Walker v. Cronin, 107 Mass. 555 (1871). An injury to a person's business 'by procuring others not to deal with him, or by getting away his customer, if unlawful means are employed, such as fraud or intimidation, or if done without justifiable cause, is an actionable wrong.' 2 Cooley on Torts (4th) section 230. One who 'maliciously or without justifiable cause induces a person to break his contract with another will be liable to the latter for the damages resulting from such breach;' and this is so even though the contract be unenforceable because within the Statute of Frauds. Ibid. section 227. Merely to persuade a person to break his contract may not be wrongful 'in law or in fact;' but if 'the persuasion be used for the indirect purpose of injuring the plaintiff, or of benefiting the defendant, at the expense of the plaintiff, it is a malicious act, which is in law and in fact a wrong act, and therefore a wrongful act, and therefore an actionable act if injury ensues from it.' Bowen v. Hall, L.R. 6 Q.B.D. 333; 50 L.J.Q.B. 305; 1 Eng.Rul.Cas. 717."

The last sentence in the foregoing quotation is believed to be interpreted in light of the entire paragraph to the end that justification of competition or service of any interest or lawful purpose affords a complete defense to the action.

In considering the contention that the vendor and broker owed a duty to submit solely plaintiffs' names to the lessor, the court noted [33 N.J.Super. 443, 111 A.2d 109]:

" * * * there must have been at least an infringement of their rights, and that the acts complained of were not in the exercise of defendants' equal or superior rights. It is difficult to follow the rationale of the plaintiffs' argument that there was a duty upon the defendants Dunn's and Greenfield to submit only their names to the landlord. There is absent any proof of the plaintiffs' assertions that the defendant Dunn's agreed or guaranteed to obtain the consent of the landlord to the assignment of the lease to the plaintiffs. The most that can be said

in that connection is that the defendant Dunn's agreed to aid and assist in obtaining the assignment, and with that purpose in mind arranged for the plaintiffs to attend at the office of Greenfield to submit their qualifications. The plaintiffs seek to give rise to a duty either by virtue of the affirmative agreement of the Dunn's agents, or through some legal implication inherent in the relation resulting by virtue of the contract. There is absent any proof that Dunn's ever positively agreed to get the consent of or approval of the landlord or definitely assured the plaintiffs that such approval would be forthcoming as a matter of course. The plaintiffs received no exclusive right by reason of their provisional contract to have their names submitted solely and exclusively to the landlord. The defendants Oremland and Lewis had at least an equal right to have their names similarly submitted. The Dunn's had a right to enter into the provisional contract with Oremland and Lewis conditioned upon the failure of the contract with plaintiffs.

" 'Proof of the existence of the ulterior motive may be inferred from the improper act, but if the act be a proper one, the motive is immaterial.'

"Ash v. Cohn, 119 N.J.L. 54, 194 A. 174, 176 (E. & A.1937). So here, the acts of the defendants in submitting both names being proper and lawful, there can be no inference that it was accomplished for an ulterior motive. There is nothing in the conduct of any of the defendants, as demonstrated by the evidence, that is outside of the domain of fair trade competition. For the plaintiffs to succeed the defendants must have been guilty of undue interference or molestation."

Bailey v. Banister, 10 Cir., 200 F.2d 683, 685, relates to a sale of property owned by a restricted Indian in which the restrictions had been removed subject to terms and conditions as prescribed by the Department of Interior. Plaintiff contracted to purchase the land from the Indian for the sum of $16,000 and deposited this sum with the Assistant Area Director of Indian Affairs who prepared a deed to be executed by the Indian and his wife. The complaint alleged that the Area Director or the Secretary of Interior would have authorized the sale and approved the deed but, due to a delay in securing the signature of the Indian's wife on the deed, the transaction was never consummated at the figure of $16,000. In the interim, defendant entered the picture. The defendant, as agent for a railway company, advised plaintiff that he would pay $2,500 for a five-acre tract and that, if plaintiff accepted this proposal, defendant would not interfere with plaintiff's purchase of the entire 105-acre tract—but if plaintiff refused, defendant would block the purchase and "run up" the price. Plaintiff refused defendant's demand, whereupon defendant notified the Department of Interior that the railway company would bid not less than $20,000 for the entire tract. Acting upon this information the Department of Interior notified the parties that the sale to plaintiff was being deferred and the property would be advertised for sale to the highest bidder. Thereafter, plaintiff purchased the property for $25,025, or $9,025 in excess of plaintiff's original agreed purchase price. In dismissing plaintiff's claim the court pointed out that this was not a case in which a defendant employed fraud, coercion or intimidation to induce one not to contract with another, and said:

"Since the plaintiff was without an enforceable contract, the defendants did no more than what they had a legal right to do, that is, offer more money for the land. Even in cases where a breach of contract has been procured, there is no liability if the breach was caused by the exercise of an absolute right."

The court also stated that, until the sale was approved by the Secretary of Interior, plaintiff acquired no legal right

to demand delivery of the deed, and defendant or anyone else had the right to compete with plaintiff for the purchase of the land *regardless of motive.*

In the opinion of this court both the Kurtz and Bailey cases present a factual situation more logically justifying a recovery than in the existing controversy. As to the plaintiff, Zoby, the defendants' representative (Heron) did not occupy a fiduciary relationship. In the absence of fraud, coercion or intimidation, the better rule seems to be that the right of free competition offsets the interests of the unsuccessful party plaintiff where defendant interferes with plaintiff's right to procure a contract.

It is apparent that text writers and courts have not reached complete agreement on the question presented. Much is said with respect to the nature of the actor's conduct, the nature of the expectancy with which his conduct interferes, the relations between the parties, the interest sought to be advanced by the actor, together with the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand. Restatement of the Law of Torts, par. 766, 767, 769, 771, 772. Where protection of the actor's interest is involved, consideration should be given to whether the actor's privilege is equal or superior to the interests of the other party. Interesting law review articles appear in 8 Harvard Law Review 1–14; 36 Harvard Law Review 663–703; 41 Harvard Law Review 728–763; 39 Harvard Law Review 307–324. The generalizations therein stated make no positive assertions and leave the field of inducement to prevent the making of a contract in an utter state of confusion where there is no evidence of fraud, coercion or intimidation and no existence of a fiduciary relationship. Particularly is this true when the alleged wrongful act consists merely in submitting a lower or higher price. The law favors free competition. It is ordinarily essential to the general welfare of society—notwithstanding the fact that competition is not altruistic but is fundamentally the play of interest against interest and so involves the interference of the successful competitor with the interest of his unsuccessful competitor in the matter of their common rivalry. Competition is the basis of man's life and is not a tort, unless the means employed be not justified by public policy thereby supplying the condition to constitute a legal wrong. To hold otherwise would open the doors of the courts for a multitude of actions asserting recommendations for acceptance of contracts which are subsequently disregarded by reason of later recommendations proposing more advantageous financial interests. Public policy dictates the utility, convenience and advantages to the general public in such a case.

The extensive briefs filed by counsel cite many authorities, all of which touch upon the general subject but are not conclusive. The determination of each case rests largely upon the factual situation. The main distinction between interference with prospective contracts (the present controversy) and interference with existing contracts appears to lie in the recognition of more extensive privileges on the part of defendants seeking to protect or advance their own interests where the contract or advantage interfered with is merely prospective. Prosser on Torts, 2nd Ed., Chap. 23, pages 745, 749.

Plaintiff finally urges that defendants are estopped to assert the question of privilege. Disagreeing with plaintiff, it clearly appears that plaintiff knew Heron could only recommend the party to whom Navy, in its discretion, would award the contract. Zoby was not deceived as he knew that he had no contractual rights until the contract was signed. While the general principles governing estoppel are well set forth in Big Vein Pocahontas Co. v. Browning, 137 Va. 34, 120 S.E. 247, it does not follow that these factors may be adapted to a situation which is entirely foreign to the facts therein presented. It is true that Zoby, following his conversation with Heron on August 18, 1954, proceeded to place a watchman on the job

site. We are not here dealing with the loss sustained by Zoby for the pay of this watchman, but for alleged wrongful interference and the damages that flow therefrom which would be necessarily the anticipated loss of profits for not having received and performed the contract.

Counsel for defendants will prepare an appropriate order granting defendants' motion for summary judgment and dismissing the action and, after presentation to counsel for plaintiff for inspection, present the same to the Court for entry.